MARSTILLER, J.
James William Hayes, Jr., seeks reversal of his convictions and sentences for robbery with a weapon, false imprisonment with a weapon or firearm, and petit theft. He asserts the trial court erred by (1) denying one of his peremptory challenges to a prospective juror, and (2) allowing the state to introduce inadmissible hearsay in the form of a rent receipt found in Mr. Hayes’s home and testimony from a law enforcement officer identifying Mr. Hayes’s wife. We affirm as to the hearsay issue without further comment. We also affirm the court’s denial of the peremptory *101 challenge, finding it not clearly erroneous for the reasons explained below.
In the criminal proceedings against Mr. Hayes, the prosecutor inquired during voir dire whether prospective jurors had any relationships with law enforcement officers that would cause them to be “biased towards law enforcement.”
MR. GORDON [prosecutor]: Ms. Kor-tuess.
PERSPECTIVE [sic] JUROR: My brother is a police officer but in another state.
MR. GORDON: And would the fact that your brother is a police officer cause you to be biased?
PERSPECTIVE [sic] JUROR: No, sir.
MR. GORDON: Okay. Ms. Haupt.
PERSPECTIVE [sic] JUROR: I have two family members in law enforcement, but they’re out of state.
MR. GORDON: Okay. And would any of those relationships cause you any undue biased towards, law enforcement?
PERSPECTIVE [sic] JUROR: No, sir.
MR. GORDON: Let’s see, Ms. Rich.
PERSPECTIVE [sic] JUROR: My granddaughter.
MR. GORDON: Your granddaughter is in law enforcement?
PERSPECTIVE [sic] JUROR: Yes.
MR. GORDON: And would that fact cause you to place any special credibility towards law enforcement officers?
PERSPECTIVE [sic] JUROR: Not at all.
When voir dire concluded, Mr. Hayes used two peremptory challenges. The court advised him he had the right to exercise up to ten such challenges, but Mr. Hayes indicated to the court he was satisfied with the jury.
Then, after the court recited the names of the six jurors and one alternate selected, of which five were women and two were men, the state and the defense each struck a juror, eliminating one man and one woman. When defense counsel attempted to also peremptorily strike prospective juror Haupt, a woman, the following exchange occurred:
MR. GORDON [prosecutor]: Your Hon- or, is it out of line if the State requests a gender neutral reason?
MR. PFEIFFER [defense counsel]: A what?
MR. GORDON: A gender neutral reason for using a strike against this female.
THE COURT: Counsel?
MR. PFEIFFER: I don’t have a gender neutral reason. She has some relatives or whatnot in law enforcement. She really didn’t answer many questions, at all. She didn’t say much of anything. To me, she’s somewhat of an unknown quantity.
THE COURT: Counsel, anything else?
MR. PFEIFFER: Nothing.
MR. GORDON: Your Honor, she did indicate that she knew law enforcement officers, but she indicated affirmatively that that would have no bearing on her potential as a juror.
THE COURT: All right. Counsel, while you’ve identified, we talked about — and I’m not sure that it applies as to a gender neutral reason to strike a potential juror in this manner. She did indicate she knew two law enforcement officers, but it created no problem for her. Otherwise, she had no other comments relating to this case....
[[Image here]]
MR. GORDON [prosecutor]: Your Hon- or, not to be difficult, but to go back to the gender neutral reason. If we strike that juror, the next juror in line was a *102 woman, anyway. So it wouldn’t change the gender makeup of the jury.
THE COURT: I’m aware of that, but each juror has the right to serve at their own right.
MR. GORDON: What?
THE COURT: I’m aware of that, but each juror has the right to serve, at their own right, absent a sufficient basis to exclude them.
The following day, before the jury was sworn, defense counsel revisited the issue:
MR. PFEIFFER: ... I’m going to renew my objection about the Court’s denial of my attempt to strike the juror during jury selection after the State asked for a gender neutral reason. Do you want to go ahead and address that?
THE COURT: Your issue is preserved — well, I should say — let me rephrase that. Your issue was raised during the jury selection process, so.
MR. PFEIFFER: Right. I actually wanted to revisit that process because I don’t believe that we followed the right procedure in that situation.
THE COURT: All right.
MR. PFEIFFER: There is a case called State versus Melbourne, 679 So.2d 759. It lays out a three-step procedure for dealing with that situation. I don’t think we quite followed it so I just wanted to clarify it. Step one — step one of the procedure is that we — that the State make a timely objection, which he did, so we go to the second step. The second step is that I have to present a facially gender neutral reason for the strike. The case law says that a reason is gender neutral on its face if the reason does not involve gender, and then the Court has to rule on whether or not my reason was gender neutral in the face. I don’t recall the Court did that or not.
THE COURT: I concluded that your reason was not genuine under the circumstances, which presumes that it was gender — or excuse me, a gender neutral reason — explanation. Now that does not address your client’s issue about wanting other people, but on the basis that was stated as the general ground, that’s presumed in that — going to the next step.
MR. PFEIFFER: Okay, and step three was as you stated. If the Court finds the reason is gender neutral, then the Court has to decide if it was pretext or genuine based on all the circumstances. And I just want to reiterate that that — I think my reason was gender neutral because the juror that I had stricken before that was a female, the one that was going to come under the jury act after my strike would have been a female, and I think the next ten jurors were all females. So I don’t see how that could, with all due respect, possibly have been non gender neutral, or how could it then be pretensual (phonetic) on the basis of gender?
THE COURT: Do you have anything else?
MR. GORDON: Your Honor, the State would only put forward that all of these arguments were made at the bench at jury selection and the Court did make a ruling at that time.
THE COURT: Not all of them, but I’ve made my observations and rulings. They stand. Thank you.
Ultimately the jury, including one alternate, comprised six women and one man.
Florida’s three-step procedure for peremptory challenge objections is set out in Melbourne v. State, 679 So.2d 759 (Fla.1996). First, the objecting party makes a timely objection and requests that the court ask the striking party to provide *103 a race-neutral[1] or gender-neutral[2] reason for striking the potential juror. Id. at 764. Next, the striking party gives an explanation for the peremptory strike. Id. If the reason given is facially race neutral or gender neutral, the court then determines whether, “given all the circumstances surrounding the strike, the explanation is not a pretext” for discrimination. Id. (footnote omitted). The question for the court is not whether the reason given for the strike is reasonable, but whether it is genuine. Id. Reasonableness is, however, pertinent to that assessment. Id. at 764 n. 9. Other relevant factors include the make-up of the venire and prior strikes against the racial or gender group of which the challenged juror is a member, as well as whether the explanation given for the challenge is equally applicable to other jurors who were not challenged. Id. at 764 n. 8. Peremptory challenges are presumed to be nondiscriminatory. Id. at 764. But trial courts have broad discretion in judging whether such challenges are proper. See Franqui v. State, 699 So.2d 1332, 1334-35 (Fla.1997). “[T]he trial court’s decision turns primarily on an assessment of credibility” and will not be disturbed on appeal “unless clearly erroneous.” Melbourne, 679 So.2d at 764-65.
Here the first two steps in the Melbourne procedure were followed: the prosecutor requested a gender-neutral reason for the peremptory strike of juror Haupt, and defense counsel offered an explanation which satisfied the court as being gender neutral. See Rojas v. State, 790 So.2d 1219, 1221 (Fla. 3d DCA 2001) (holding that reason given for peremptory strike— proposed juror’s husband was a law enforcement officer — was gender neutral). It is the third step in the process — the court’s assessment of the genuineness of the reason given for the strike — with which Mr. Hayes takes issue.
The state has confessed error on this issue. “A confession of error, however, is not binding upon an appellate court, and it is the practice of Florida appellate courts not to accept erroneous concessions by the state.” Perry v. State, 808 So.2d 268, 268 (Fla. 1st DCA 2002) (citations omitted). As the reviewing court, we are mindful that the trial court’s decision is primarily a question of credibility, and the genuineness determination takes into account “all the circumstances surrounding the strike.” See Melbourne, 679 So.2d at 764. Judging a party’s credibility “is solely within the purview of the finder of fact.” Rojas, 790 So.2d at 1220 (quoting Pringle v. State, 792 So.2d 533, 535 (Fla. 3d DCA 2001)). Mr. Hayes argues — and the state agrees — the record does not support the court’s finding that defense counsel’s gender-neutral reason was a pretext. Indeed, as Mr. Hayes points out, the gender make up of the jury would have been unchanged if juror Haupt were removed. But as the Florida Supreme Court stated in Abshire v. State, 642 So.2d 542 (Fla.1994):
The fact that several women were seated as jurors is of no moment, for as we have previously said “number alone is not dispositive, nor even the fact that a member of the minority in question has been seated as a juror or alternate.” State v. Slappy, 522 So.2d 18, 21 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); see also [State v.] Johans, 613 So.2d at 1321 (“A [gender-neutral] justification for a peremptory challenge cannot be inferred merely from circumstances such as the *104 composition of the venii’e or the jurors ultimately seated.”).
Id. at 544-45.
We cannot definitively say the trial court’s ruling is clearly erroneous and wholly unsupported by the record. The transcript of voir dire reveals nothing about the jurors the defense successfully removed by peremptory challenge prior to the attempted strike of juror Haupt. Thus Mr. Hayes cannot demonstrate, for example, the prior strikes included few or no women. But the transcript does show defense counsel’s initial response to the request for a gender-neutral justification for removing juror Haupt was “I don’t have a gender-neutral reason.” And although counsel recovered with “She has some relatives or whatnot in law enforcement,” two other individuals with family in law enforcement remained on the jury. These circumstances, together with the court’s assessment of defense counsel’s credibility (which we are not in a position to second guess) tend to support the denial of the peremptory challenge. Because we see no clear error here, we are constrained to uphold the lower court’s ruling.
AFFIRMED.
ROWE, J., Concurs; KAHN, J., dissents with opinion.

. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).