PARIENTE, J.
Peremptory challenges during jury selection are once again the subject of this Court’s review. More specifically, we address the misapplication by both the trial court and the First District Court of Appeal in Hayes v. State, 45 So.3d 99 (Fla. 1st DCA 2010), of the procedure this Court set forth in Melbourne v. State, 679 So.2d 759 (Fla.1996), for eliminating discrimination during the exercise of peremptory challenges. In this case, the trial court erred in denying defense counsel’s peremptory challenge to a female juror, notwithstanding the undisputed gender-neutral reason counsel proffered (her relationship to law enforcement officers). The trial court mistakenly assessed defense counsel’s reason as if it were assessing a challenge for cause and failed to perform the critical third step of the Melbourne procedure, which requires an assessment of the genuineness of counsel’s proffered reasons for the strike. Further, the trial court erroneously relieved the State — the opponent of the strike — of its burden to establish that the reason for the challenge, despite being gender-neutral, was pretex-tual.
Perpetuating these errors, the First District incorrectly deferred to the trial court’s nonexistent genuineness inquiry on appeal and then improperly placed the burden of persuasion on the proponent of the challenge, the defendant in this case, to establish that his strike was being exercised in a nondiscriminatory manner. While deference to a trial judge’s findings of genuineness is necessary, deference to a trial judge’s ruling that lacks any record support is an invitation to produce arbitrary results. As the State’s concession of error before the First District recognized, the proper remedy for the trial court’s denial of the defendant’s peremptory challenge in this case was to reverse and remand for a new trial.
Because the First District’s decision in Hayes affirming the denial of the defendant’s peremptory challenge is contrary to and results in a misapplication of Melbourne’s well-established precedent, we have jurisdiction. See art. V, § 3(b)(3), Fla. Const.; see also Jaimes v. State, 51 So.3d 445, 446 (Fla.2010) (identifying misapplication of decisions as a basis for express and direct conflict under article V, section 3(b)(3) of the Florida Constitution); Wallace v. Dean, 3 So.3d 1035, 1040 (Fla.2009) (same). For the reasons more fully explained below, we quash the decision of the First District.
FACTS AND PROCEDURAL HISTORY
Hayes was tried on three counts of armed robbery and three counts of false imprisonment with a weapon or firearm. While questioning prospective jurors during jury selection, the prosecutor asked the venire about whether any of the jurors had close friends or family who worked in law enforcement. Juror Robin Haupt, a female, responded that she had two out-of-state family members who worked in law enforcement, but agreed that those relationships would not cause her any “undue bias[ ].” Two other women, a juror and the alternate juror, also answered that they had family members who worked in law enforcement, but like juror Haupt, each acknowledged that it would not cause them to be biased or afford any special credibility to law enforcement officers.
*456 At the conclusion of voir dire, defense counsel exercised two peremptory challenges without objection. The court then recited the names of the six jurors and the one alternate juror selected, of which five were women and two were men. Thereafter, the State and the defense each exercised a backstrike[1] of an additional juror, eliminating one man and one woman from the jury.[2]
Defense counsel then moved to peremptorily backstrike juror Haupt. The prosecutor objected, and the following exchange ensued:
[PROSECUTOR]: Your Honor, is it out of line if the State requests a gender neutral reason?
[DEFENSE COUNSEL]: A what?
[PROSECUTOR]: A gender neutral reason for using a strike against this female.
THE COURT: Counsel?
[DEFENSE COUNSEL]: I don’t have a gender neutral reason. She has some relatives or whatnot in law enforcement. She really didn’t answer many questions, at all. She didn’t say much of anything. To me, she’s somewhat of an unknown quantity.
THE COURT: Counsel, anything else?
[DEFENSE COUNSEL]: Nothing.
[PROSECUTOR]: Your Honor, she did indicate that she knew law enforcement officers, but she indicated affirmatively that that would have no bearing on her potential as a juror.
THE COURT: All right. Counsel, while you’ve identified, we talked about — and I’m not sure that it applies asdo a gender neutral reason to strike a potential juror in this manner. She did indicate she knew two law enforcement officers, but it created no problem for her. Otherwise, she had no other comments relating to this case. ...
[[Image here]]
THE COURT: All right. Any others?
[DEFENSE COUNSEL[3]]: Your Honor, not to be difficult, but to go back to the gender neutral reason. If we strike that juror, the next juror in line was a woman, anyway. So it wouldn’t change the gender makeup of the jury.
THE COURT: I’m aware of that, but each juror has the right to serve at then-own right.
[DEFENSE COUNSEL]: What?
THE COURT: I’m aware of that, but each juror has the right to serve, at their own right, absent a sufficient basis to exclude them.
(Emphasis added.) Without conducting any inquiry as to the genuineness of defense counsel’s explanation, and without any attempt by the State to demonstrate that the reason given was not gender-neutral or was pretextual, the trial court denied defense counsel’s motion to use a *457 peremptory challenge to strike juror Haupt.
The next day, before the jury was sworn in, defense counsel again raised the issue of the trial court’s denial of his attempt to peremptorily backstrike juror Haupt. At that time, defense counsel provided the trial court with another opportunity to revisit the decision to disallow the peremptory challenge and pointed out his recollection that the next ten jurors after juror Haupt were all female:
[DEFENSE COUNSEL]: ... I’m going to renew my objection about the Court’s denial of my attempt to strike the juror during jury selection after the State asked for a gender neutral reason. Do you want to go ahead and address that?
THE COURT: Your issue is preserved — well, I should say — let me rephrase that. Your issue was raised during the jury selection process, so.
[DEFENSE COUNSEL]: Right. I actually wanted to revisit that process because I don’t believe that we followed the right procedure in that situation.
THE COURT: All right.
[DEFENSE COUNSEL]: There is a case called State versus Melbourne [Melbourne v. State ], 679 So.2d 759. It lays out a three-step procedure for dealing with that situation. I don’t think we quite followed it so I just wanted to clarify it. Step one — step one of the procedure is that we — that the State make a timely objection, which he did, so we go to the second step. The second step is that I have to present a facially gender neutral reason for the strike. The case law says that a reason is gender neutral on its face if the reason does not involve gender, and then the Court has to rule on whether or not my reason was gender neutral in the face. I don’t recall the Court did that or not.
THE COURT: I concluded that your reason was not genuine under the circumstances, which presumes that it was gender — or excuse me, a gender neutral reason — explanation. Now that does not address your client’s issue about wanting other people, but on the basis that was stated as the general ground, that’s presumed in that — going to the next step.
[DEFENSE COUNSEL]: Okay, and step three was as you stated. If the Court finds the reason is gender neutral, then the Court has to decide if it was pretext or genuine based on all the circumstances. And I just want to reiterate that that — I think my reason was gender neutral because the juror that I had stricken before that was a female, the one that was going to come under the jury act [sic] after my strike would have been a female, and I think the next ten jurors were all females. So I don’t see how that could, with all due respect, possibly have been non gender neutral, or how could it then be [pretextual] on the basis of gender?
THE COURT: Do you have anything else?
[PROSECUTOR]: Your Honor, the State would only put forward that all of these arguments were made at the bench at jury selection and the Court did make a ruling at that time.
THE COURT: Not all of them, but I’ve made my observations and rulings. They stand. Thank you.
(Emphasis added.) Once again, the prosecutor did not offer anything in response to indicate that defense counsel’s peremptory challenge was pretextual. The jury, as empanelled, was ultimately composed of six jurors — five women and one man — with one female alternate.
On appeal, Hayes argued that the trial court erred in denying his peremptory *458 challenge of juror Haupt, warranting a new trial.[4] He specifically asserted that the trial court’s basis for denying the strike was inapplicable to peremptory challenges because it related to a challenge for cause and that the record did not support the court’s finding that defense counsel’s gender-neutral reason was pretextual under step three of the three-part procedure this Court set forth in Melbourne. The State conceded error, agreeing with Hayes that the trial court engaged in the wrong inquiry and urging the First District to remand for a new trial. The State candidly acknowledged in its brief that
[i]n the case at bar, it is clear that the trial court mistakenly considered the challenge as if it were a challenge for cause not a peremptory challenge. Because knowing people in law enforcement is a gender neutral reason and there is nothing in the record to support a finding that the reason was not genuine, this case must be remanded for a new trial.
(Emphasis added.)
Without referencing either Hayes’s contention or the State’s concession that the trial court mistakenly considered the challenge as if it were one for cause, the First District affirmed the trial court’s decision to disallow defense counsel’s strike of juror Haupt. Hayes, 45 So.3d at 104. In doing so, the district court initially noted that the trial court complied with the first two steps of the Melbourne procedure because the prosecutor requested a gender-neutral reason for the peremptory strike of juror Haupt (step one), and defense counsel offered a facially gender-neutral explanation after the trial court requested that he do so (step two). Id. at 103 (citing Rojas v. State, 790 So.2d 1219, 1221 (Fla. 3d DCA 2001), for the proposition that a prospective juror’s relationship to a law enforcement officer is a gender-neutral reason for exercising a peremptory strike).
In turning to step three — the trial court’s assessment of the genuineness of the reason given for the strike — the First District rejected the State’s concession of error and affirmed the trial court’s decision to disallow defense counsel’s challenge since, in the district court’s view, it was not clearly erroneous under the Melbourne standard of review. Id. at 103-04. The district court recognized that under Melbourne, a determination of genuineness turns primarily on credibility and takes into account “all the circumstances surrounding the strike.” Id. at 103 (quoting Melbourne, 679 So.2d at 764). The First District faulted Hayes for failing to demonstrate a lack of discriminatory intent, ostensibly deferring to the trial court’s credibility determinations, and reasoned as follows:
We cannot definitively say the trial court’s ruling is clearly erroneous and wholly unsupported by the record. The transcript of voir dire reveals nothing about the jurors the defense successfully removed by peremptory challenge prior to the attempted strike of juror Haupt. Thus Mr. Hayes cannot demonstrate, for example, the prior strikes included few or no women. But the transcript does show defense counsel’s initial response to the request for a gender-neutral justification for removing juror Haupt was “I don’t have a gender-neutral reason.” And although counsel recovered with “She has some relatives or whatnot in law enforcement,” two other individuals with family in law enforcement remained on the jury. These circumstances, together with the court’s assessment of defense counsel’s credibility (which we *459 are not in a position to second guess) tend to support the denial of the peremptory challenge.
Id. at 104. The district court affirmed Hayes’s convictions. Id.
Judge Kahn dissented, finding the State’s concession of error in this case to be “both highly professional and highly perceptive.” Id. (Kahn, J., dissenting). In Judge Kahn’s view, the majority’s deference to the trial court’s disallowance of the challenge was an invitation to produce arbitrary results, especially in a case where a prospective juror’s relationship with law enforcement- officers was the proffered reason for exercising a peremptory strike. See id. From his review of the record, Judge Kahn believed that defense counsel’s initial statement that he did not have a gender-neutral reason “more or less came out because defense counsel was completely surprised by the prosecution’s objection, and, most likely, had never even considered in his own mind that he was focusing on the gender of the prospective witness, rather than upon her relationship with the law enforcement officers.” Id.
Hayes petitioned this Court to review the First District’s decision, arguing that the district court misapplied the principles this Court enunciated in Melbourne and its progeny, and we accepted jurisdiction.
ANALYSIS
Hayes’s position centers on the trial court’s denial of his peremptory strike on the basis of pretext, focusing on the third step of the simplified three-step procedure this Court articulated in Melbourne v. State, 679 So.2d 759 (Fla.1996) — the trial court’s genuineness inquiry. Hayes argues that the First District applied the clearly erroneous standard of review arbitrarily and ignored what the record actually reflected in order to affirm the trial court. The State, on the other hand, contends that the district court adequately analyzed the evidence that was available in the record and gave proper weight to the trial court’s findings due to the trial court’s superior vantage point. To resolve this issue, we review our precedent regarding peremptory challenges, discuss the applicable standard of review, and then apply our precedent to the facts of this case. For the reasons discussed below, we conclude that both the trial court and the First District misapplied Melbourne’s well-established precedent.
Peremptory Challenges and the Right to a Fair and Impartial Jury
A practice of ancient origin, the peremptory challenge is “part of our common law heritage” and has “very old credentials.” J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 147, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (O’Connor, J., concurring) (quoting Edmonson v. Leesville Concrete Co., 500 U.S. 614, 639, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (O’Connor, J., dissenting)); see also Busby v. State, 894 So.2d 88, 97 (Fla.2004) (quoting Swain v. Alab0ama, 380 U.S. 202, 212, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled on other grounds by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). While there is no freestanding constitutional right to exercise peremptory challenges at either the state or federal level, this Court has long recognized that “such challenges are ‘nonetheless one of the most important of the rights secured to the accused.’ ” Smith v. State, 59 So.3d 1107, 1111 (Fla.2011) (quoting Busby, 894 So.2d at 98). The central function of peremptory challenges is to “enabl[e] each side to exclude those jurors it believes will be most partial toward the other side.” Holland v. Illinois, 493 U.S. 474, 484, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) (citing Batson, 476 U.S. at 91, 106 S.Ct. 1712). Recognizing the interplay between voir dire and peremptory challenges in American trials, the United States Supreme Court has noted that jury selection “operates] as a predicate *460 for the exercise of peremptories,” the persistence and extensive use of which “demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury.” Swain, 380 U.S. at 219, 85 S.Ct. 824.
Indeed, peremptory challenges, as well as challenges for cause, are the primary tools by which parties remove unfavorable jurors from the jury panel. Peremptory and for-cause challenges constitute “distinct, but complementary, methods to aid those facing criminal charges in achieving the constitutional right of trial by an impartial jury.” Busby, 894 So.2d at 99; see also Swain, 380 U.S. at 219-20, 85 S.Ct. 824 (“[T]he very availability of perempto-ries allows counsel to ascertain the possibility of bias through probing questions on the voir dire and facilitates the exercise of challenges for cause by removing the fear of incurring a juror’s hostility through examination and challenge for cause.”). While the two types of challenges work in tandem to permit the removal of a potential juror in whom the striking party perceives a certain bias or hostility, peremptory challenges differ considerably from challenges for cause.
Challenges for cause, while unlimited in number, allow the removal of panel members only on certain enumerated grounds, including a potential juror’s lack of impartiality. Busby, 894 So.2d at 99. The necessity of excusing a juror for cause arises where “any reasonable doubt exists as to whether the juror possesses an impartial state of mind.” Id. at 95. Peremptory challenges, in contrast, are limited in number and have traditionally been exercised according to a party’s unfettered discretion. Id. at 99 (recognizing that peremptory challenges “can be used to excuse a juror for any reason”). Given .the considerable freedom parties possess when utilizing peremptory challenges, it is clear that a party’s reasons for exercising a peremptory challenge “need not rise to the level justifying a challenge for cause,” State v. Slappy, 522 So.2d 18, 22 (Fla.1988), receded from on other grounds by Melbourne, 679 So.2d at 765, and “can be used when defense counsel cannot surmount the standard for a cause challenge,” Busby, 894 So.2d at 100.
Affording a criminal defendant the full use of his or her allotted peremptory challenges is an essential part of securing a fair and impartial jury under Florida’s constitution, and his or her use of peremptory challenges is limited only by the rule that such challenges may not be used to exclude prospective jurors because of their race, ethnicity, or gender. Smith, 59 So.3d at 1111; see also Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (holding that the U.S. Constitution prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges); San Martin v. State, 705 So.2d 1337, 1343 (Fla.1997) (“Under Florida law, a party’s use of peremptory challenges is limited only by the rule that the challenges may not be used to exclude members of a ‘distinctive group.’ ”). As this Court explained in State v. Neil, 457 So.2d 481 (Fla.1984), receded from on other grounds by State v. Johans, 613 So.2d 1319,1321 (Fla.1993):
The primary purpose of peremptory challenges is to aid and assist in the selection of an impartial jury. It was not intended that such challenges be used solely as a scalpel to excise a distinct racial group from a representative cross-section of society. It was not intended that such challenges be used to encroach upon the constitutional guarantee of an impartial jury.
Id. at 486 (emphasis added).
Thus, to strike the appropriate balance between a party’s right to exercise peremptory challenges and the attempt to *461 eliminate invidious discrimination in juror selection, this Court in Melbourne enunciated a three-step procedure to be followed when a party objects to the exercise of a peremptory challenge on the ground that it was made on a discriminatory basis.[5] First, the objecting party must make a timely objection, show that the venireper-son is a member of a distinct protected group, and request that the trial court ask the striking party to provide a reason for the strike. Melbourne, 679 So.2d at 764. Second, if these initial requirements are met, the court must ask the proponent of the strike to explain the reason for the strike, and the burden shifts to the proponent to come forward with a race-, ethnicity-, or gender-neutral explanation. Id. Third, if the explanation is facially race-, ethnicity-, or gender-neutral, the court must determine whether the explanation is a pretext “given all the circumstances surrounding the strike,” with the focus of this inquiry being the genuineness of the explanation. Id.
When enforcing the above guidelines, courts begin with the premise that peremptory challenges are presumed to be exercised in a nondiscriminatory manner. Id. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful discrimination. Id.
The law governing this process is well-defined. As we have previously explained: “Melbourne establishes a simple, precise, and easy-to-administer procedure for challenging a litigant’s suspected use of a peremptory challenge to discriminate based on race or other impermissible factors .... The ‘simplified inquiry’ adopted by this Court recognizes that little is required to request, and evaluate, a neutral explanation_” Welch, 992 So.2d at 213 (quoting State v. Whitby, 975 So.2d 1124, 1130 (Fla.2008) (Pariente, J., concurring)). Compliance with each step is not discretionary, and the proper remedy when the trial court fails to abide by its duty under the Melbourne procedure is to reverse and remand for a new trial. See Welch, 992 So.2d at 211-13 (reversing for new trial where, following the opponent’s step-one objection, the trial court focused on the grounds for the opponent’s objection instead of following the Melbourne procedure, which requires the trial court to request the proponent’s reason for the strike); see also Johans, 613 So.2d at 1322 (“[W]e hold that the proper remedy in all cases where the trial court errs in failing to hold a [peremptory challenge] inquiry [on the basis of alleged discrimination] is to reverse and remand for a new trial.”).
In this case, the parties do not contest that there was full compliance with steps one and two of the Melbourne procedure. Rather, the parties take issue with the third step, which we examine in turn.
The Third-Step Genuineness Inquiry
As stated above, in applying the third step, the trial court must satisfy itself that the explanation is not a pretext. Melbourne, 679 So.2d at 764.[6] It has been *462 observed that “[t]he genuineness of the explanation is the yardstick with which the trial court will determine whether or not the proffered reason is pretextual.” Davis v. State, 691 So.2d 1180, 1183 (Fla. 3d DCA 1997). Melbourne teaches that to assess genuineness, the trial court must consider all relevant circumstances surrounding the strike in determining whether the proffered reason for the strike is genuine. Melbourne, 679 So.2d at 764 n. 8. This Court explained in Murray v. State, 3 So.3d 1108 (Fla.2009), that
[i]n determining whether or not a proffered race-neutral reason for a peremptory strike is a pretext, the court should focus on the genuineness of the race-neutral explanation as opposed to its reasonableness.
In making a genuineness determination, the court may consider all relevant circumstances surrounding the strike. “Relevant circumstances may include— but are not limited to — the following: the racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment.” [Melbourne, 679 So.2d at 764 n. 8] (citing State v. Slappy, 522 So.2d 18 (Fla.1988)); see also Booker v. State, 773 So.2d 1079, 1088 (Fla.2000) (“[W]e provided a nonexclusive list of factors a trial court may consider in determining whether the reason given for exercising a peremptory challenge is genuine....” (citing Melbourne, 679 So.2d at 764 n. 8)).
Murray, 3 So.3d at 1120 (citations omitted).
The proper test under Melbourne requires the trial court’s decision on the ultimate issue of pretext to turn on a judicial assessment of the credibility of the proffered reasons and the attorney or party proffering them, both of which “must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record.” Slappy, 522 So.2d at 22; see also Melbourne, 679 So.2d at 764; Young v. State, 744 So.2d 1077, 1082 (Fla. 4th DCA 1999) (“[Identifying the true nature of an attorney’s motive behind a peremptory strike turns primarily on an assessment of the attorney’s credibility.”). We have consistently held that the trial court’s assessment will be affirmed on appeal unless clearly erroneous. Melbourne, 679 So.2d at 764-65; see also Rodriguez v. State, 753 So.2d 29, 41 (Fla.2000) (noting that because the validity of a peremptory strike rests on the trial court’s assessment of credibility, an appellate court should affirm unless the determination is clearly erroneous).
Despite the need of appellate courts to defer to a trial court’s credibility assessment, this Court has recognized that the clearly erroneous standard is not a mechanism through which appellate courts can simply rubber-stamp the trial court’s ruling. For instance, in Nowell v. State, 998 So.2d 597 (Fla.2008), when reversing a trial court’s finding of genuineness because it was unsupported by the record, we ex *463 plained that although “the trial court is in the best position to assess the genuineness of the reason advanced, and the decision ■will be affirmed unless clearly erroneous ... ‘deference does not imply abandonment or abdication of judicial review,’ ... because ‘[difference does not by definition preclude relief.’ ” Id. at 602 (quoting Dorsey v. State, 868 So.2d 1192, 1200 (Fla.2003); Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).
We acknowledge that the Melbourne procedure does not require the trial court to recite a perfect script or incant specific words in order to properly comply with its analysis under step three. Indeed, there “is no requirement that the trial court specifically use the word ‘genuine.’ ” Hoskins v. State, 965 So.2d 1, 12 (Fla.2007); see id. (holding that the trial court applied correct standard in step three analysis even though trial court used the term “real” as this term was synonymous with word “genuine”). Nevertheless, “Melbourne does not relieve a trial court from weighing the genuineness of a reason just as it would any other disputed fact.” Dorsey, 868 So.2d at 1202.
After the trial court determines that the proponent has proffered a race-, ethnicity-, or gender-neutral reason and then proceeds to evaluate that reason’s genuineness, the trial court can easily inquire of the opponent of the strike, who at that point bears the burden of persuasion, to demonstrate why the reason was not genuine. But where the opponent of the strike fails to provide the trial court with an explanation as to why the reasons given were pretextual, and the trial court thereafter fails to undertake an on-the-record genuineness inquiry, the reviewing court is unable to engage in meaningful appellate review. See id. at 1200 (emphasizing that a trial court record is necessary for “meaningful appellate review”). This is because “the appellate court is not a forum for conducting an after-the-fact ... inquiry,” and where “no inquiry is conducted, ‘[d]ef-erence cannot be shown to a conclusion that was never made.’ ” Hall v. Daee, 602 So.2d 512, 515-16 (Fla.1992) (quoting Reynolds v. State, 576 So.2d 1300, 1302 (Fla.1991)).
An appellate court’s inability to review a trial court’s genuineness inquiry is of particularly great concern when the trial court prohibits a party from striking a juror despite the absence of evidence of discriminatory intent. A trial court’s refusal to permit a peremptory challenge is tantamount to a finding that the strike was being exercised for a discriminatory purpose. Yet, in Melbourne, this Court emphasized the presumption that peremptory challenges are exercised in a nondiserimi-natory manner and that the burden of persuasion is on the opponent of the strike to establish support for purposeful discrimination.
Therefore, where the record is completely devoid of any indication that the trial court considered circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court. This same reasoning applies to instances where the record affirmatively indicates that the trial court engaged in the wrong legal analysis. Deferring to the trial court’s genuineness determination on appeal when no such determination has been made invites an arbitrary result.
Interpreting our jurisprudence on this issue, Florida’s appellate courts have fairly consistently reversed for a new trial where the record provides no indication that the trial court engaged in the re *464 quired genuineness inquiry.[7] Conversely, where the record supports the conclusion that the trial court has actually considered relevant circumstances surrounding the strike, it is proper for the reviewing court to conclude that a finding has been made, notwithstanding that the trial court did not recite a perfect script or incant “magic” words. See Sutton v. State, 976 So.2d 643, 644 (Fla. 2d DCA 2008) (holding that the trial court applied the correct law during step three because “[wjhen the trial court’s ruling [was] read in its entirety, it [was] apparent that the trial judge understood that he was making the ruling required for step three and that he was actually ruling that the facially race-neutral explanation was not genuine”); Watson, 841 So.2d at 661 (rejecting the defendant’s argument that the trial court failed to conduct a genuineness inquiry where the record showed that immediately after striking the potential juror, the court noted there was another African American on the venire, indicating that the court was considering the makeup of the panel).
Misapplication of Melbourne
In the present case, we conclude that the trial court’s misapplication of Melbourne is twofold. First, when evaluating defense counsel’s strike, the trial court employed a for-cause analysis rather than undertaking a peremptory-challenge analysis. Then, the trial court failed to adequately engage in the genuineness inquiry mandated by the third step of the Melbourne procedure. On appeal, the First District perpetuated the trial court’s errors by first deferring to the court’s nonexistent genuineness inquiry under the clearly erroneous standard of review and then by improperly placing the burden on Hayes, the proponent of the strike, of disproving purposeful discrimination given the lack of record support.
The record shows that step one of the Melbourne procedure was satisfied because the State requested that the trial *465 court inquire of defense counsel as to a gender-neutral reason for striking juror Haupt. Subsequently, the trial court satisfied step two when it asked defense counsel to explain his reason for the strike. The reason proffered by defense counsel was that juror Haupt had relatives in law enforcement. Courts have universally considered a prospective juror’s familial relationship with someone in law enforcement to be a valid and facially neutral reason for the exercise of a peremptory challenge. See, e.g., Simmons, 940 So.2d at 583 (recognizing that a juror’s spouse being a law enforcement officer was race-neutral on its face); Russell v. State, 879 So.2d 1261, 1263 (Fla. 3d DCA 2004) (stating that a potential juror having a relative in law enforcement “has been repeatedly found to be a valid, race neutral or gender neutral reason for a peremptory strike”); Chambers v. State, 682 So.2d 615, 615 (Fla. 4th DCA 1996) (“[T]he law enforcement background of a juror’s spouse is a properly neutral reason for a peremptory challenge-”); Czaja v. State, 674 So.2d 176, 177 (Fla. 2d DCA 1996) (“A close relationship between the juror and a law enforcement officer is a race-neutral reason for exercising a peremptory strike.”).
Since the reason defense counsel offered was facially gender neutral, the trial court was then required to engage in step three — the genuineness analysis. At this juncture, the prosecutor argued that juror Haupt “did indicate that she knew law enforcement officers, but [also] indicated affirmatively that [it] would have no bearing on her potential as a juror.” The trial court disallowed the strike and made the following statement:
THE COURT: Counsel, while you’ve identified, we talked about — and I’m not sure that it applies as to a gender neutral reason to strike a potential juror in this manner. She did indicate she knew two law enforcement officers, but it created no problem for her. Otherwise, she had no other comments relating to this case.
The next day, when defense counsel apprised the trial court of its inadequate Melbourne analysis, the trial court simply noted that it had concluded the day before that defense counsel’s “reason was not genuine under the circumstances.” Neither the State nor the trial court set forth any other observations.
Based on this exchange, we conclude that both Hayes and the State, which conceded error below, were correct in the First District. By focusing merely on whether juror Haupt’s relationship with two law enforcement officers “created no problem for her” (i.e., whether she could be fair), the trial court mistakenly considered defense counsel’s challenge as one for cause, thereby imposing a higher burden upon defense counsel. Since the record is completely devoid of any indication that the trial court complied with its obligation to properly consider the issue of genuineness, the First District, which was confined to the record before it, improperly assumed that a genuineness inquiry was in fact conducted by deferring to the trial court, which had utilized the wrong standard.
Given that no genuineness inquiry was ever conducted, the First District speculated as to the reasons the trial court disallowed the strike and essentially treated the situation as if it were the defendant who was challenging the State’s strike. The district. court reasoned that Hayes failed to demonstrate that the peremptory strikes defense counsel raised before the attempted strike of juror Haupt included few or no women given that the record was silent on this point. See Hayes, 45 So.3d at 104. In doing so, the district court did not consider the proper effect of the lack of record support for the trial court’s rul *466 ing and improperly placed the burden of persuasion on Hayes — the proponent of the strike — to disprove a finding of purposeful discrimination. However, since it was the State’s burden in this scenario, as the opponent of the strike, to overcome the presumption of nondiscrimination and to prove discriminatory intent, the State was the party responsible for establishing record support for that position at the trial level. Cf Dorsey, 868 So.2d at 1202-03 (reasoning that because the proponent of the strike has the burden to set forth a facially neutral reason under step two of the Melbourne procedure, the State as the proponent never satisfied its burden of production by proffering a race-neutral reason that was either observed by the trial court or otherwise supported by the record).
By requiring Hayes to disprove the State’s assertion of discriminatory intent in the absence of record support, the First District disregarded the presumption of nondiscrimination, relieved the State of its burden of proof, and erroneously faulted Hayes for the State’s inability to meet its burden. This allocation of burdens is directly contrary to Melbourne.
No Evidence of Purposeful Discrimination
In holding that there was evidence to support the conclusion that defense counsel’s motive in exercising the strike was discriminatory, the First District set forth the following reasoning:
[T]he transcript does show defense counsel’s initial response to the request for a gender-neutral justification for removing juror Haupt was “I don’t have a gender-neutral reason.” And although counsel recovered with “She has some relatives or whatnot in law enforcement,” two other individuals with family in law enforcement remained on the jury.
Hayes, 45 So.Sd at 104. Having reviewed the record, we conclude this reásoning was in error.
While not dispositive of the issue, we initially note that the record before us affirmatively indicates that Hayes’s six-person jury was composed of five women, and the alternate juror was also a woman. Defense counsel also pointed out his unre-butted recollection that the next ten prospective jurors in the venire after juror Haupt were women as well. See Knight v. State, 919 So.2d 628, 633 (Fla. 3d DCA 2006) (affirming the trial court’s decision to allow State to exercise peremptory strike against a female juror given that the record indicated four females were picked as jurors and two females were picked as alternates, thereby supporting the trial court’s decision that a peremptory challenge was not pretextual).
The State conceded in the court below that there was “nothing in the record to support a finding that [defense counsel’s] reason was not genuine.” The First District did not accept the State’s concession, relying in part upon defense counsel’s initial response for removing juror Haupt: “I don’t have a gender neutral reason.” After this statement, defense counsel immediately gave a gender-neutral reason, which the State did not contest. Instead, the State suggested that juror Haupt had indicated that she could be fair — a justification relevant to a for— cause analysis. Regardless of whether defense counsel’s statement was inadvertent or was actually meant to convey that juror Haupt’s relationship with law enforcement officers was a neutral reason, just not specifically gender neutral, it is unquestionable that case law supports the conclusion that such a relationship presents a valid and neutral basis for exercising a peremptory challenge.
*467 The First District also reasoned that two other individuals with family members in law enforcement remained on the jury. Certainly, disparate treatment of similarly situated jurors can give rise to a finding of pretext. See Melbourne, 679 So.2d at 764 n. 8. However, the State did not raise this to the trial court. Had the State done so, the trial judge would have been able to pursue this inquiry and demand a response from the defense relating to the suggestion of pretext. Furthermore, the trial court gave no indication that this served as a basis for denying the strike.
Based on the record before us, there is absolutely no evidence to support a conclusion that defense counsel was motivated by anything even tenuously related to invidious discrimination.
CONCLUSION
It is critical that in cases dealing with a party’s challenge to jurors during the jury-selection process, we bear in mind that the reason for the Melbourne inquiry is to prevent discrimination against distinct groups of individuals through the use of peremptory challenges. If the Melbourne procedure is not followed, there is a danger that the purpose for which the procedure was established — to prevent discrimination — will erode. Therefore, those involved at every level — the parties, the trial court, and the appellate court— should be vigilant to remember all three steps in the Melbourne procedure. We emphasize that under the final step, the step at issue in this case, if the proponent’s reason for the challenge is race-, ethnicity-, or gender-neutral, then the trial court should inquire of the opponent of the strike. At this point, the opponent of the strike bears the burden of persuasion to establish that the reason is a pretext for discrimination, and the trial court has the responsibility to determine the issue of genuineness based on the record before it. The trial court should request that the opponent advise why the reason is not genuine, and how, given all the circumstances, the explanation is a pretext.
Where there is no evidence that a peremptory challenge is being exercised in a discriminatory manner to exclude a person on the basis of her gender, the very purpose for the Melbourne procedure is undermined if the strike is denied. Here, although the defendant sought to strike a juror who had ties to law enforcement, that juror remained on the jury panel. Thus, the defendant’s right to exercise a peremptory challenge was denied absent a concomitant benefit of preventing discrimination in jury selection. Because it misapplied and frustrated the original purpose of Melbourne, we quash the decision of the First District Court of Appeal in Hayes.
It is so ordered.
QUINCE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result.
POLSTON, J., concurs in result only with an opinion.
CANADY, C.J., dissents.

. The term "backstriking” refers to "a party’s right to retract his acceptance and object to a juror at any time before that juror is sworn.” Dobek v. Ans, 475 So.2d 1266, 1267-68 (Fla. 4th DCA 1985); see also Hunter v. State, 660 So.2d 244, 248 (Fla.1995).

. As a result of these backstrikes, two prospective jurors were removed from the panel — a man and woman. During his colloquy with the trial court the following day, defense counsel stated that the prospective juror he struck prior to striking juror Haupt was a woman.

.From a common-sense review of this exchange, it would appear that at this point in the dialogue, the court reporter actually misnamed the party speaking and incorrectly listed the speaker as the prosecutor. It would be illogical for the prosecutor to use the pronoun "we” and then defend the basis for defense counsel's attempted strike.

. Hayes also argued that the trial court erred in allowing the State to introduce inadmissible hearsay. The district court affirmed the trial court’s ruling on this issue without elaboration, and Hayes does not raise that issue in this Court.

. Melbourne involved race-based discrimination during jury selection. These same guidelines apply to claims of gender-based discrimination. See Welch v. State, 992 So.2d 206, 210-13 (Fla.2008).

. Case law illustrates that where the defendant argues on appeal that a trial court erred with respect to a party’s peremptory strike on the question of genuineness, the appellate court is generally confronted with two Melbourne scenarios. The first arises when the defendant objects to the State's exercise of a peremptory strike, but the trial court allows the strike. See, e.g., Alonzo v. State, 46 So.3d 1081 (Fla. 3d DCA 2010), review denied, 70 So.3d 586 (Fla.2011); Tetreault v. State, 24 So.3d 1242 (Fla. 1st DCA 2009); Watson v. State, 841 So.2d 659 (Fla. 4th DCA 2003); Shuler v. State, 816 So.2d 257 (Fla. 2d DCA 2002). In this situation, the defendant, as the opponent of the strike, carries the burden of *462 persuasion to demonstrate purposeful discrimination and must overcome the presumption that the State's strike was exercised in a nondiscriminatory manner. Under the second, the State objects to the defendant's exercise of a peremptory strike, but the trial court disallows the strike and permits the juror to sit as a member of the jury. See, e.g., Lidiano v. State, 967 So.2d 972 (Fla. 3d DCA 2007); Sharp v. State, 789 So.2d 1211 (Fla. 5th DCA 2001). In this situation, the State, as the opponent of the strike, carries the burden of persuasion to prove purposeful discrimination and must demonstrate that it has overcome the presumption that the defendant's strike was exercised in a nondiscriminatory manner. The case under review involves the latter of these two issues.

. See, e.g., Siegel v. State, 68 So.3d 281, 287 (Fla. 4th DCA 2011) (reversing for new trial where the record was devoid of any indication that the trial court actually engaged in requisite genuineness analysis of the defendant's reason for peremptory strikes since there was no proof of consideration of any circumstances relevant to this inquiry); Te-treault, 24 So.3d at 1243-44 (reversing where the trial court did not make express rulings explaining why it found the State's reasons for striking prospective jurors were genuine, indicating that the court bypassed the third step in the Melbourne analysis and focused solely on the State's reasons as being gender-neutral); Simmons v. State, 940 So.2d 580 (Fla. 1st DCA 2006) (reversing on same grounds as in Tetreault and distinguishing from prior cases where appellate courts affirmed, given that record did not disclose that the trial court ever reached step three); Agro Distrib., LLC v. Rowe, 876 So.2d 709, 710-11 (Fla. 4th DCA 2004) (holding that the trial court reversibly erred by disallowing the defense’s strike when the determination was based solely on the credibility of the prospective juror, who had indicated that "she could be perfectly fair”); Jones v. State, 787 So.2d 154, 157 (Fla. 4th DCA 2001) ("[Wjhere a gender or race neutral reason was advanced for the strike, the reason advanced is itself reasonable, and the record is devoid of any indication that the trial judge considered the relevant circumstances surrounding the strike in concluding that it was motivated by improper purposes, we must conclude that the trial judge failed to adequately engage in the 'genuineness inquiry’ mandated by Melbourne.”), review denied, 817 So.2d 850 (Fla.2002); Anderson v. State, 750 So.2d 741, 742-44 (Fla. 3d DCA 2000) (reversing for a new trial after agreeing with the State’s concession of error on appeal that the trial court did not properly adhere to the three-step analysis of Melbourne because although full compliance with steps one and two was shown, nothing in the record indicated that the court engaged in a step-three determination where court only made the comment that it had been four years since the juror’s last victimization).