LAGOA, J.
(dissenting).
On appeal, Norona argues that the trial court erred in refusing to allow the defense to exercise a peremptory challenge to excuse X.G. where the defense provided a gender — neutral and non-pretextual reason for the challenge. Because I believe the trial court erred when it disallowed Norona’s peremptory challenge to X.G. after defense counsel provided a genuine, race-neutral and gender-neutral reason for the challenge, I respectfully dissent.
The record reveals that after conducting voir dire on a panel of fifty prospective jurors, the parties began exercising cause and peremptory challenges in sequential order. After proceeding through the first twenty jurors, a panel of six jurors was accepted by the State. At this point, defense counsel moved to peremptorily exercise a backstrike[1] against juror number ten, X.G. The prosecutor objected, and the following exchange ensued:
MS. MAHDAVIAN [defense counsel]: We will exercise our fourth peremptory on Juror No. 10.
THE COURT: Juror No. 10, any objection from the State?
MS. QUESADA [ASA]: Yes, we got a race—
THE COURT: She is a Hispanic female. Okay.
MS. QUESADA: Yes.
MS. WINGAD [defense counsel]: Judge, she spoke about her, on her juror questionnaire about her connection to government. She has family members or her husband is a corrections officer, he is retired.
THE COURT: Former corrections officer.
MS. WINGAD: Right. Her contact with—
THE COURT: That was her only connection that we could see.
MS. WINGAD: She is still married to that individual and it is not that remote that she doesn’t have some knowledge or understanding of punishments, different types of crimes or facts supporting why individuals are in custody. Also she was questioned by Ms. Mahdavian, and I need to find the exact note.
MS. QUESADA: Does that apply to what Ms. Mahdavian has already said, jurors don’t need to possess an understanding of punishment to serve as jurors.
THE COURT: Can you remind me of that, I don’t even remember that question.
MS. QUESADA: I don’t either.
*1099 THE COURT: But I wanted to hear what they were saying.
MS. WINGAD: No, Judge, our concern is just given her connection to the criminal justice system through her husband who works in corrections.
THE COURT: Who used to work in corrections.
MS. WINGAD: Who used to work in corrections. She has a different understanding of the criminal justice system than the average juror so she’s bringing in different information than somebody else might. And there are other jurors, on this panel who spoke about sentencing and punishment and had some concerns about that. At each point the lawyers or the Court corrected those jurors to not consider those types of factors.
THE COURT: They’ll ask her the question. I’m going to deny that I’m going to leave her on the jury. She has the least connection with government. There is [sic] about thirty people on this panel that have connection with government.
Do you have anything else?
MS. WINGAD: She also said at 2:49 that an officer could have a stake in a case therefore they may not be as credible. We don’t believe that she—
THE COURT: Well that was the question that Ms. Mahdavian asked. I am assuming that that is the right answer, an officer could have a stake. That is no reason to take her off of the jury that could help you.
Anything else?
MS WINGAD: No, your Honor.
THE COURT: All right, denied.
Other than that do you accept the panel? Anything else?
MS. SANCHEZ-LEDO [ASA]: Judge, if I may before you continue I want to put something back on the record with counsel was talking about striking Ms. Juror No. 10 Ms. [X.G.], she advised because she had a relation to law enforcement. Juror No. 11 I believe is-still on the panel, has not been stricken, he has two cousins who are cops.
THE COURT: So noted. I already denied the peremptory.
Okay, let’s go to alternates.
(Emphasis added).
In Melbourne v. State, 679 So.2d 759 (Fla.1996), the Florida Supreme Court set forth a three-part procedure that must be followed whenever a peremptory strike is challenged as discriminatory. “First, the objectiiig party must make a timely objection, show that the venireperson is a member of a distinct protected group, and request that the trial court ask the striking party to provide a reason for the strike. Second, if these initial requirements are met, the court must ask the proponent of the strike to explain the reason for the strike, and the burden shifts to the proponent to come forward with a race-, ethnicity-, or gender-neutral explanation. Third, if the explanation is facially race-, ethnicity-, or gender-neutral, the court must determine whether the explanation is a pretext ‘given all the circumstances surrounding the strike,’ with the focus of this inquiry being the genuineness of the explanation.” Hayes v. State, 94 So.3d 452, 461 (Fla.2012) (quoting Melbourne v. State, 679 So.2d 759, 764 (Fla.1996).
On appeal, when enforcing the procedure enunciated in Melbourne, it is important to remember that “courts begin with the premise that peremptory challenges are presumed to be exercised in a nondiscriminatory manner.” Hayes, 94 So.3d at 461; accord Melbourne, 679 So.2d at 764. The burden of persuasion rests on the opponent of the strike to show that the *1100 proponent’s reason is discriminating and pretextual. See Wynn v. State, 99 So.3d 98fr (Fla. 3d DCA 2012). See also Hayes, 94 So.3d at 461 n. 6 (“[T]he State, as the opponent of the strike, carries the burden of persuasion to prove purposeful discrimination and must demonstrate that it has overcome the presumption that the defendant’s strike was exercised in a nondis-eriminatory manner.”).
Here, both step one and step two of the three-step procedure set forth in Melbourne were satisfied by the trial court. At issue here is step three — whether the “facially race-, ethnicity-, or gender-neutral ... explanation [for the strike] is a pretext.” Hayes, 94 So.3d at 461. In determining pretext, the trial court should focus on the genuineness of the explanation offered for the strike. See Murray v. State, 3 So.3d 1108, 1120 (Fla.2009). “Melbourne teaches that to assess genuineness, the trial court must consider all relevant circumstances surrounding the strike in determining whether the proffered reason for the strike is genuine.” Hayes, 94 So.3d at 462 (emphasis added). “Relevant circumstances may include — but are not limited to — the following: the racial makeup of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment.” Melbourne, 679 So.2d at 764 n. 8.
While it is true that there is nothing in Melbourne which requires trial judges to articulate their thought process on the issue of pretext, see Johnson v. State, 706 So.2d 401, 404 (Fla. 3d DCA 1998); Davis v. State, 691 So.2d 1180,1183 (Fla. 3d DCA 1997), where, as here, a non-diseriminatory explanation is advanced for the strike and the reason advanced is reasonable, the record must contain an indication that the trial court considered all relevant circumstances in denying the strike. See Wynn, 99 So.3d at 989; Siegel v. State, 68 So.3d 281, 286 (Fla. 4th DCA 2011); Garcia v. State, 75 So.3d 871, 874-75 (Fla. 3d DCA 2011), review denied, 95 So.3d 214 (Fla. 2012); Jones v. State, 787 So.2d 154, 156-57 (Fla. 4th DCA 2001).
Here, there is no indication in the record that the trial court considered “relevant circumstances” in denying defense counsel’s peremptory strike of juror number ten, X.G. The State’s challenge to the strike was based on race and gender, i.e., a Hispanic female. See Garcia, 75 So.3d at 874, n. 2 (“Hispanics are a ‘cognizable class’ and thus a protected group for this purpose in Florida”). “Once defense counsel has given a race-neutral [or gender-neutral] reason for the strike, the trial court has the duty to determine ‘whether the opponent of the strike has proved purposeful racial [or gender] discrimination.’ ” Czaja v. State, 674 So.2d 176, 177 (Fla. 2d DCA 1996) (quoting Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). The record in this case, however, shows that the trial court did not consider this issue and focused only on other jurors’ relationship with law enforcement.
Our sister court’s opinion in Chambers v. State, 682 So.2d 615 (Fla. 4th DCA 1996), is indistinguishable from the facts of this case. In Chambers, defense counsel peremptorily struck a prospective juror whose husband was a retired firefighter and police officer. After the State asked for a gender-neutral reason for the strike, the trial court sustained the State’s objection to the strike. On appeal, the defendant argued that the trial court’s denial of the peremptory strike constituted reversible error. In reversing and remanding for a new trial, the Fourth District held that the defendant’s neutral explanation that the strike was based on the background of the *1101 juror’s spouse (a retired firefighter and police officer) was “constitutionally permissible” and nothing in the record showed that, after the defense provided a neutral reason for the strike, the trial court determined “whether the party opposing the challenge ha[d] shown purposeful, invidious discrimination.” Id. at 616.
Here, as in Chambers, there is nothing in the record to show that the trial court considered any “relevant circumstances” upon which to find that the defense’s stated reason for the strike was pretextual. The State objected to the strike based on X.G.’s race and gender as a Hispanic female. The trial court, however, did not determine whether the defense was improperly striking Hispanic females. Instead, the trial court based its reasoning for denying the strike on other juror members’ connections with law enforcement.
In denying the strike, the trial court observed: “She has the least connection with government. There is [sic] about thirty people on this panel that have connection with government.” However, a review of the record shows that when the trial court made this statement the parties had reached (in sequential order) juror number twenty and selected a panel of six jurors, which eventually served as the jury. At the time that the trial court denied the defense’s strike of X.G., only three people had any “connection with government”: (1) juror number ten, X.G., whose husband was a retired corrections officer; (2) juror number eleven, P.C.P., a male who had two cousins who were police officers; and (3) juror number three, M.A.D., an African-American male who had one uncle who was a state trooper, and another uncle who had committed crimes. The State, however, had already exercised a peremptory challenge to juror number three, M.A.D., after proceeding sequentially through the first twenty jurors.[2] Therefore, there was just one juror, other than juror number ten, who was selected to serve on the jury that had any relationship to law enforcement.
On appeal, the State relies upon this juror — juror number eleven, P.C.P., for its argument that defense counsel’s reason for the strike was not genuine, because P.C.P. had two cousins who were police officers. Having two cousins who are police officers, without more, is not a similar situation to being married to a retired corrections officer. This is especially true where the record shows that P.C.P. did not indicate on his juror questionnaire, as X.G. did, that he had a relative who was a law enforcement officer, but rather, only remembered it later, during questioning of other potential jurors.
Additionally, the trial court was incorrect in its statement “about [the] thirty people on this panel who have [a] connection with [the] government.” These remaining thirty potential jurors had yet to be considered by either the state or the defense. Because the trial court had yet to reach these thirty people in the jury selection process, they were not relevant comparators in an inquiry of whether the defense was attempting to exercise a peremptory strike “based on a reason equally applicable to an unchallenged juror.” Melbourne, 679 So.2d at 764 n. 8.
The majority’s statement that “at that point in the jury selection process, the defense had not accepted another Hispanic female” is not supported by the record. When defense counsel sought to exercise a *1102 peremptory strike against X.G., the defense had accepted two other female jurors, both of whom eventually sat on the jury — Juror Blasser and Juror Da Costa. As this Court explained in Davis v. State, 691 So.2d 1180, 1182 n. 1 (Fla. 3d DCA 1997), surnames do not determine a juror’s race or ethnicity, particularly where that juror is a woman. Here, the record indicates only the surnames of the two other female jurors, with no indication of their ethnicity. It is possible that either or both of the two other female jurors are Hispanic. Nonetheless, the selection of two other females who served on the jury panel establishes that there was no gender discrimination present and the proffered reason was genuine. Indeed, the record “is simply devoid of any ‘relevant circumstances’ upon which to find the defense’s stated reason for the strike pretextual or other than genuine.” Garcia, 75 So.3d at 875.
Turning to the separate issue of Hispanics on the panel, at the time that defense counsel moved to peremptorily backstrike juror number ten [X.G.], the defense had accepted two Hispanic males, juror number nine (Felix Clávelo Lopez)[3] and juror number eleven (Pablo Carlos Pando). The selection of two Hispanic males, who ultimately served on the jury, establishes that the defense was not improperly trying to keep Hispanics from serving on the jury.
A trial court’s refusal to allow a peremptory challenge “is tantamount to a finding that the strike was exercised for a discriminatory purpose.” Hayes, 94 So.3d at 463; accord Wynn, 99 So.3d at 990. Because the reason proffered by defense counsel (the fact that X.G.’s husband was a retired corrections officer) was a valid race-neutral and gender-neutral reason, the trial court erred in denying the strike. See Alexander v. State, 643 So.2d 1151, 1152 (Fla. 3d DCA 1994) (reversing conviction and holding that trial court erred in denying defendant’s peremptory challenge to juror with family members in law enforcement as this proffered reason constituted a valid race-neutral reason for challenging the juror); Czaja, 674 So.2d at 177 (holding that, if the State’s objection was sufficient to trigger a Neil inquiry, a close relationship between juror and a law enforcement officer is a race-neutral reason for exercising a peremptory strike and that trial court’s decision to sustain State’s objection to defendant’s exercise of peremptory strike constituted reversible error).
Because this record does not indicate that the trial court considered circumstances relevant to whether the defense was trying to exclude female Hispanics from serving on the jury, I would reverse and remand for a new trial.

. "The term 'backstriking' refers to ‘a party's right to retract his acceptance and object to a juror at any time before that juror is sworn.' " Hayes v. State, 94 So.3d 452, 456 n. 1 (Fla.2012) (quoting Dobek v. Ans, 475 So.2d 1266, 1267-68 (Fla. 4th DCA 1985)).

. Significantly, after the State moved for a peremptory strike of M.A.D., the defense asked for a race-neutral reason as M.A.D. was an African-American male. The trial court never considered M.A.D.'s relationship with law enforcement when considering the defense's Melbourne inquiry.

. During voir dire, Juror Clávelo Lopez advised the trial court that he had a child attending college in Cuba.