679 So.2d 766 (1996)
THE FLORIDA BAR, Complainant,
v.
Billy A. BRAKEFIELD, Respondent.
No. 85003.
Supreme Court of Florida.
September 5, 1996.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee; and Bonnie L. Mahon and Susan R. Gralla Zemankiewicz, Assistant Staff Counsel, Tampa, for Complainant.
Billy A. Brakefield, pro se, Holiday, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Billy A. Brakefield. We have jurisdiction. Art. V, § 15, Fla. Const.
The referee made the following findings of fact as to the Bar's complaint based on the evidence presented at the hearing:
A. As to the Multigraphics Case:
1. Joseph Scarfo (Scarfo) was the owner of a printing, copying and packaging business known as Postal Center USA and also as Florida Mailing and Shipping Center, Inc. His stepson Walter Bennetti (Bennetti) worked with Scarfo in the businesses. Respondent Billy A. Brakefield owned and operated a used car lot near one of Scarfo's business locations and met Scarfo and Bennetti through utilizing their copying services.
. . . .
3. Multigraphics was an equipment supplier that had supplied a large copying machine to Scarfo's business and, according to Scarfo, had prematurely removed the machine from the business premises, thereby causing a loss of business and *767 profits. Scarfo and Bennetti sought legal assistance from Brakefield.
. . . .
6. ... Brakefield testified that his investigation revealed the case against Multigraphics to be weak and so informed Scarfo and Bennetti. Scarfo and Bennetti testified that Brakefield told them the case was strong, particularly in light of his discovery that Multigraphics was not registered to do business in the State of Florida. Scarfo and Bennetti each testified that Brakefield told them that he had actually filed suit against Multigraphics, had held at least one hearing and had scheduled and rescheduled various depositions.
7. Scarfo and Bennetti sought periodic updates on the Multigraphics matter.... Upon calling after January 7, 1994, it was discovered that Brakefield's telephone had been disconnected.
. . . .
9. By early February 1994, Bennetti had sought the assistance of another lawyer, Dominic Amadio, who referred him to The Florida Bar. Mr. Amadio tried to locate Brakefield ... but had no success. Scarfo and Bennetti contacted The Florida Bar and asked for the Bar's assistance.... The Bar then managed to contact Brakefield and requested the return of documents for the Multigraphics case as well as for other cases. Most of those documents were returned, but not until June or July 1994.
10. ... While this referee strongly suspects that Brakefield misled Scarfo and Bennetti as to his progress or lack thereof concerning the Multigraphics litigation, the evidence in this regard does not rise to the clear and convincing level necessary to make a finding of [misrepresentation] in this proceeding.
B. As to Cory case (Cory I and Cory II):
11. One of Scarfo's business locations was in Largo Village, Largo, Pinellas County, Florida. Largo Village was owned by Richard Cory who, on March 23, 1993, sued Scarfo in Broward County for non-payment of rent.
12. Scarfo claimed to be intentionally withholding rent because of a bad odor emanating from the pet shop adjacent to the business premises.... Scarfo and Bennetti requested that Brakefield handle the legal representation of this rent dispute.
13. Brakefield undertook the representation of Scarfo and his wife and filed a Motion for Change of Venue.... [A] Default was entered by the clerk on April 26, 1993, for the failure of the Defendants to have served or filed any paper as required by law.
14. On May 20, 1993, Cory filed a Motion in Opposition to Change of Venue....
. . . .
16. In spite of the default, Cory set Defendants' Motion for Change of Venue and his own Motion in Opposition to Change of Venue for hearing on June 3, 1993, in Broward County.
17. Brakefield failed to notify his clients of the existence of the hearing and failed to appear at the hearing either in person or by telephone. On June 3, 1993, the Court ... determined that the Motion for Change of Venue was moot since a default had been entered by the clerk prior to the filing of the Motion for Change of Venue and the default had not been vacated.
18. On June 8, 1993, the court in Broward County entered Final Judgment in favor of Cory and against Scarfo and his wife in the amount of $6,067.00 for rent due from February until June 1993, $303.35 for late payment penalties, $160.00 lawuit expenses and $750.00 attorneys fees. Scarfo learned of the existence of this judgment when he received it in the mail.
During the pendency of the proceedings in Broward county, Cory filed a separate lawsuit (Cory II) in Pinellas County seeking eviction of Scarfo from the business premises. Brakefield undertook representation....
19. In both cases, Cory I and Cory II, Brakefield did not have any fee discussion with his clients.
20. The Pinellas County eviction proceeding was set for final hearing in August *768 1993. Approximately 45 minutes prior to the final hearing, Brakefield called Scarfo and Bennetti and advised them that he would not be attending the final hearing. He suggested that Bennetti ask the court for permission to conduct questioning and cross-examination at the trial. Bennetti is not an attorney.
21. Prior to the commencement of the trial, Bennetti advised the judge that his attorney was not going to be present and requested permission to ask questions and conduct cross-examination. The court refused.
22. At the court's request, Bennetti beeped Brakefield. Upon Brakefield's return call, the trial was conducted with Brakefield attending by phone.
23. ... Brakefield was unable to put any documentation into evidence since he had the documents in his file and was not present at the final hearing with the documents.
. . . .
C. As to Cisco case:
25. Scarfo had originally purchased his business from Barnard Cisco and Jacquelyn Cisco.... When a dispute concerning the payments arose, Cisco sued Scarfo. Once again, Brakefield undertook the representation of Scarfo and his wife and, once again, there was no discussion of the fee to be charged for doing so.
26. Plaintiff scheduled the deposition of Scarfo and his wife in November 1993. At Scarfo's request, Brakefield got the deposition continued .... [and] rescheduled.... Brakefield failed to notify his clients of the deposition date and failed to appear himself for the deposition.
27. On January 25, 1994, Plaintiff filed a Motion for Order Compelling Attendance at Deposition and for the award of expenses, including a reasonable attorney's fee.
28. On January 27, 1994, a notice of hearing was filed by Plaintiff scheduling the motion for hearing on February 7, 1994. The notice was served by mail on Brakefield.
29. Brakefield failed to appear at the hearing and an order granting the motion and assessing fees and costs was entered by the court on March 17, 1994.
30. Brakefield acknowledges that he was in error for failing to attend the deposition and for failing to attend the hearing.
D. As to the Singer case:
31. Scarfo and his wife lived in a condominium complex. The unit directly above Scarfo was owned by Ted Singer. Singer had a leak in his unit which caused $1,600.00 worth of damage to Scarfo's unit. Singer paid for one-half of said damage by delivering a check for $800.00. Scarfo was not satisfied with only one-half the damage and took the matter to Brakefield.
32. Scarfo states that Brakefield agreed to file suit, and later stated that suit had actually been filed, the matter had gone so far as a final hearing and the judge was only waiting for Brakefield to submit a final judgment for entry. Brakefield, of course, denies this and contends that the matter was only discussed in general and that he never agreed to represent Scarfo in this particular matter. 33. Scarfo's testimony was that he told Brakefield that if he would collect the $800.00 due he could have $100.00 of it. It seems unlikely that a lawyer would handle an $800.00 claim for a fee of $100.00 contingent upon collection. However, it also appears that Brakefield was, at the least, less than clear about his refusal to prosecute the claim.
The referee recommended that Brakefield be found guilty of violating the following disciplinary rules:
1. As to rule 4-1.1 which requires an attorney to provide competent representation, I recommend the Respondent be found guilty....
2. As to Rule 4-1.3. I recommend that Respondent be found guilty of violating Rule 4-1.3 requiring a lawyer to act with reasonable diligence and promptness in dealing with clients.
3. Rule 4-1.4(a). I recommend that Respondent be found guilty of violating Rule 4-1.4(a) which requires a lawyer to *769 keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
4. Rule 4-1.4(b). I recommend that Respondent be found guilty of violating Rule 1.4(b) which requires a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
5. Rule 1.16(d). I recommend that Respondent be found guilty of violating Rule 1.16(d) which requires that upon termination of representation, a lawyer should take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned.
6. Rule 4-8.4(c). I recommend that Respondent be found not guilty of violating Rule 4-8.4(c). While I suspect that misrepresentations were made about the progress, or lack thereof, in the Multigraphics and Singer matters, the evidence of misrepresentation did not rise to the level of "clear and convincing" and therefore I do not make a recommendation of guilt.
Before recommending discipline, the referee took into account Brakefield's prior record:
On February 2, 1992, the Respondent received an admonishment for failure to act with reasonable diligence and promptness when representing a client.
On October 27, 1994, the Respondent received a public reprimand and was placed on eighteen (18) months probation for failure to act with reasonable diligence and competence when representing a client and failure to adequately communicate with the client.
The referee found no mitigating factors, one aggravating factor (the prior admonishment on February 2, 1992 for a similar problem), and recommended the following discipline:
IV. Recommendation as to Disciplinary Measures to be Applied:

It is recommended that the Respondent, BILLY A. BRAKEFIELD, be suspended from the practice of law for a period of six (6) months, and thereafter until he shall prove rehabilitation; that he be placed on one (1) year probation consecutive to his current term of probation which ends on or about April 27, 1996; that prior to reinstatement, he be required to attend and successfully complete The Florida Bar's Ethics School, at his own expense; and that he be assessed the Bar's costs in these proceedings. The terms of probation are recommended as follows:
1. Respondent shall be required to reimburse Francis R. Lakel, Esq., for attorney's fees and court reporter's fees in the total amount of $111.00 to satisfy an order entered by the trial court against Respondent's clients, Joseph L. Scarfo and Jane E. Scarfo, as a result of Respondent's failure to attend a scheduled deposition on their behalf; and
2. Respondent shall be required to abide by the Rules Regulating The Florida Bar.
Brakefield contends that the referee's findings of fact are not adequately supported by the evidence. We disagree. Our review of the record indicates that Brakefield failed to diligently and competently represent his clients; he abandoned them without first withdrawing from representation; he failed to advise his clients that he was declining representation on some legal matters; and he failed to protect his clients' interests upon withdrawal.
The referee's findings of fact are entitled to a presumption of correctness when, as in the instant case, they are supported by competent substantial evidence. Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992). Absent a showing that such findings are clearly erroneous or lacking in evidentiary support, they will not be disturbed by this Court. Id. Brakefield has made no such showing and we accept the referee's findings of fact and recommendations concerning guilt.
*770 Brakefield next argues that the referee failed to consider any mitigating factors such as the absence of a dishonest or selfish motive, his personal problems, remorse, and an unreasonable delay in the disciplinary proceedings which prejudiced his normal ability to recall specific conversations two to three years after the fact. The record indicates that Brakefield failed to present evidence of mitigation, remorse, or personal problems. Likewise, he presented no evidence of prejudice caused by any alleged delay in the disciplinary proceedings as required under Florida Bar v. Lehrman, 485 So.2d 1276, 1278 (Fla.1986).
Based on the foregoing, we adopt the referee's recommended discipline in its entirety. Cf. Florida Bar v. Patterson, 530 So.2d 285 (Fla.1988) (one-year suspension appropriate for failing to communicate with clients and return documents; abandoning clients by leaving the state without notice; neglecting legal matters entrusted to him; and providing faulty representation). Brakefield is hereby suspended for a period of six months and thereafter until he: proves rehabilitation; successfully completes The Florida Bar's Ethics School; serves one year on probation consecutive to his current term; reimburses Francis R. Lakel in the amount of $111.00; and pays the costs in these proceedings. The suspension will be effective thirty days from the filing of this opinion so that Brakefield can close out his practice and protect the interests of existing clients. If Brakefield notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Brakefield shall accept no new business from the date this opinion is filed until the suspension is completed. Pursuant to the provisions of Rule Regulating The Florida Bar 3-5.1(g), upon receipt of this order of suspension, Brakefield shall forthwith furnish a copy of the order to all his clients with matters pending in his practice. Furthermore, within thirty days after receipt of this order, Brakefield shall furnish staff counsel of the Bar with a sworn affidavit listing the names and addresses of all clients who have been furnished copies of the order. Judgment and costs in the amount of $2,568.30 is entered in favor of The Florida Bar against Brakefield, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.