LEVINE, J.
The issue presented is whether the trial court erred in allowing the exclusion of two African-American jurors without conducting an inquiry into the genuineness of the race-neutral reasons given by the state. We find that the trial court erred in not conducting an inquiry into the genuineness of the reasons offered by the state for its exclusion of the two jurors. We therefore reverse and remand.
In this case, two juries were selected consecutively from a single jury panel. The state was represented by the same prosecutor in both cases. During voir dire in the other defendant’s case, the prosecutor asked prospective juror 9, a retired registered nurse, about her prior experience as a juror and whether she would have any problem following the law. The prosecutor initially used a peremptory challenge on juror 9 without objection. Also during jury selection for the other defendant, prospective juror 37 was asked if he had a problem following the law, to which juror 37 said, “No.” The state then said, “You seem very hesitant. Do you have any questions for me? No? Okay. Would you like to be on the jury?” Juror 37 answered, “It doesn’t matter to me.” Juror 37’s name was reached for consideration in the jury selection in the present case, and the state used a peremptory challenge on prospective juror 37:
[STATE]: The State would use a peremptory on number thirty-seven....
[DEFENSE]: Defense asks for a race-neutral reason. [Juror 37] is an African-American.
[STATE]: Your Honor, the juror was very hesitant in answering questions. He seemed disinterested. I even asked him about that. He was uh, no, uh. I feel like he’s not an appropriate for [In-discernibles].
THE COURT: Anything else, [Defense]?
[DEFENSE]: I don’t think his being slow to answer questions would have anything to do with his qualification to be a juror on the case.
[STATE]: Your Honor, I would say that’s her opinion but it’s based on my opinion why [Indiscernibles] juror.
THE COURT: Yeah. I think it’s race-neutral. So I’ll — I’ll sustain the challenge. So that’s — okay. That takes us to [the following prospective juror].
Subsequently, juror 9’s name was reached for consideration in the jury selection in the present case, and again the state sought to use a peremptory challenge for prospective juror 9:
*1189 [STATE]: The State would use a peremptory on [juror 9]. That’s the last I think.
THE COURT: Correct.
[DEFENSE]: Defense would like to point out that [juror 9] is an African-American and asks for a race-neutral reason for the strike.
[STATE]: She’s a nurse.
[DEFENSE]: I would ask that the State explain why being a nurse is— would make her unfit to be a juror on this case or have any bearing at all on whether she could be a juror.
[STATE]: I don’t have to explain that to you. She’s a nurse. I don’t want a nurse on my panel. It’s a race-neutral reason. It’s not one of the protected classes. It’s a valid reason.
THE COURT: All right. I’ll sustain the strike. That takes us to [the following prospective juror].
When the jury was seated, appellant accepted the jury subject to his prior objections. After trial, appellant was convicted of three counts of burglary of a dwelling and three counts of theft, which were reduced to petit theft. This appeal ensued.
Where a peremptory strike is alleged to have been exercised in a racially discriminatory manner, we review a trial court’s ruling “to determine whether it was clearly erroneous or an abuse of discretion.” Wimberly v. State, — So.3d-(Fla. 4th DCA 2012). In conducting our review, we are guided by the principles that “peremptory challenges are presumed to be exercised in a nondiscriminatory manner” and that a ruling on such a challenge “turns primarily on an assessment of credibility.” Cobb v. State, 825 So.2d 1080, 1086 (Fla. 4th DCA 2002).
When an objection is made to the assertion of a peremptory challenge, and the objection asserts that the peremptory challenge was made on a discriminatory basis, the Florida Supreme Court has clearly delineated a three step procedure that must be followed:
First, the objecting party must make a timely objection, show that the venire-person is a member of a distinct protected group, and request that the trial court ask the striking party to provide a reason for the strike. Second, if these initial requirements are met, the court must ask the proponent of the strike to explain the reason for the strike, and the burden shifts to the proponent to come forward with a race-, ethnicity-, or gender-neutral explanation. Third, if the explanation is facially race-, ethnicity-, or gender-neutral, the court must determine whether the explanation is a pretext “given all the circumstances surrounding the strike,” with the focus of this inquiry being the genuineness of the explanation.
Hayes v. State, 94 So.3d 452, 461 (Fla.2012) (citing Melbourne v. State, 679 So.2d 759, 764 (Fla.1996)).
As to prospective juror 9, step one occurred when appellant objected and asked the state for a race-neutral reason. Step two occurred, as the burden shifted to the state to articulate a race-neutral reason for the peremptory strike of juror 9. At this point, the state replied by stating that the race-neutral reason for the strike was because “she’s a nurse.” “[T]he defendant, as the opponent of the strike, carrie[d] the burden of persuasion to demonstrate purposeful discrimination and [had to] overcome the presumption that the State’s strike was exercised in a nondiscriminatory manner.” Id. at 462 n. 6. In the present case, appellant met this burden by asking “the state [to] explain why being a nurse is — would make her unfit to be a juror on this case or have any *1190 bearing at all on whether she could be a juror.”
The record does not state why being a nurse could satisfy the genuineness prong of step three. For example, during voir dire, the state did not question juror 9 “regarding the effect her employment might have upon her ability to fulfill jury duty.” Mayes v. State, 550 So.2d 496, 498 (Fla. 4th DCA 1989).[1] As stated in Hernandez v. State, 686 So.2d 735, 736 (Fla. 2d DCA 1997):
[A] mere recitation of a juror’s occupation in many cases would not be sufficient to state a facially race-neutral reason. Because almost every potential juror works, either in the home or outside the home, there is a real risk that occupation could be used pretextually as a “facially” race-neutral reason to strike practically any juror.
In response to appellant’s request that the state explain the connection between juror 9’s occupation as a nurse and her ability to serve, the state asserted that it did not “have to explain that to [appellant].” At this point, step three, the trial court was required to determine whether the state’s explanation was a pretext when considering all the circumstances, and to determine if the state’s explanation was genuine. Since the trial court did not articulate any analysis on the record, and merely summarily “sustained] the strike” of the state, we find that the trial court did not conduct the genuineness analysis of step three, as required by Melbourne.
The state asks us to infer, based on other parts of the record, that the trial court considered relevant circumstances surrounding the strike. In the present case, however, we are unable to do so. As we recently observed:
[W]here the record is completely devoid of any indication that the trial court considered circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court.
Victor v. State, — So.3d - (Fla. 4th DCA 2012) (quoting Wimberly, — So.3d -)•
As to prospective juror 37, we also find that the trial court erred by not performing a genuineness analysis pursuant to step three of Melbourne. While a trial court need not “recite a perfect script or incant specific words in order to properly comply with its analysis under step three,” in the present case, the trial court only stated, “I think it’s race-neutral” in response to the state’s race-neutral reason for the strike. Id. (quoting Wimberly, — So.3d-). As such, we are “unable to satisfy ourselves” that the trial court determined whether the state’s reason that juror 37 was disinterested was either genuine or a pretext by considering any relevant circumstances surrounding the strike. Simmons v. State, 940 So.2d 580, 583 (Fla. 1st DCA 2006).
Because we find that the trial court did not comply with step three of the Melbourne procedure by undertaking a genuineness analysis in response to the race-neutral reasons given by the state for its *1191 peremptory strikes of jurors 9 and 37, we reverse appellant’s convictions and remand for a new trial.

Reversed and remanded for a new trial.

STEVENSON and GERBER, JJ., concur.

. See also Cobb, 825 So.2d at 1084 ("Florida courts have often invalidated a peremptory challenge as a pretext where the excused juror was not questioned and shown to share the alleged group bias.”); Crews v. State, 921 So.2d 864, 867 (Fla. 4th DCA 2006) (indicating that a "failure to examine the juror or perfunctory examination” remains a factor to be used in determining whether the state’s reason is an impermissible pretext) (quoting State v. Sloppy, 522 So.2d 18, 22 (Fla.1988)).