NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TAVARES WAYNTEL SPENCER, JR.,          )
                                       )
        Appellant,                     )
                                       )
v.                                     )        Case No. 2D14-316
                                       )
STATE OF FLORIDA,                      )
                                       )
        Appellee.                      )
                                       )
_____)

Opinion filed March 18, 2016.

Appeal from the Circuit Court for
Hillsborough County; Emmett L. Battles,
Judge.

Howard L. Dimmig, II, Public Defender,
and Dan Hallenberg, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Marilyn Muir Beccue,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

        Tavares Wayntel Spencer, Jr., appeals his judgments and sentences for

attempted first-degree murder, robbery with a firearm, aggravated battery with great

bodily harm, and aggravated assault with a deadly weapon.  The only issue that he

raises on appeal is whether the trial court properly ruled upon his objections to the

State's exercise of two peremptory challenges of African-American members of the venire. This case requires this court to consider the actions that must be taken by the opponent of a peremptory challenge to preserve a claim under Melbourne v. State, 679 So. 2d 759 (Fla. 1996), after the proponent of the challenge provides a race-neutral reason. In other words, it requires us to consider the actions the opponent must take to preserve a claim of error during step 3 of the Melbourne procedure. We conclude that the supreme court in Hayes v. State, 94 So. 3d 452 (Fla. 2012), has not placed an automatic burden on the trial court to perform a full genuineness analysis on the record in every instance in which a party objects to a peremptory challenge and the proponent provides a facially neutral reason. If an opponent wants the trial court to determine whether a facially neutral reason is a pretext, the opponent must expressly make a claim of pretext and at least attempt to proffer the circumstances that support its claim. Because the defendant did not preserve a Melbourne issue in this manner, we affirm.

## I. THE UNDERLYING FACTS

Although the issue on appeal is limited to events during jury selection, the legal analysis used to test the propriety of a peremptory challenge can be based to some degree on the nature of the case and the factual issues that will confront the jury. Thus, we briefly explain the evidence at the trial in this case.

When Mr. Spencer was sixteen years old, he met the victim, who was a few years older than Mr. Spencer. Both Mr. Spencer and the victim are African-American. On the day that they met, they texted extensively about the possibility of a sexual encounter. The victim was hoping to be compensated for this encounter. Only after a number of communications did the victim disclose her transgender status. This

complication did not end the communications, and the two ultimately met in person the following day. Mr. Spencer led the victim into a secluded area. At this point in the story, the victim's recollection of the incident and Mr. Spencer's are in complete conflict.

The victim testified that Mr. Spencer pointed a handgun at her and ordered her to the ground. She gave him her cellphone, and he took her purse. He emptied her purse and ultimately took both her cellphone and her wallet, which contained a small amount of money. While she was still on the ground, he fired the gun twice, striking her in the hip with one shot. She got up and ran, jumping a fence. Mr. Spencer was running behind her, and he fired the gun another three or four times. She believed one bullet grazed her back. She ran to an occupied home, and Mr. Spencer did not pursue her further.

Mr. Spencer testified at trial. He claimed that the victim was actually the one who cornered him in the secluded area. He retreated to the fence. According to Mr. Spencer, the victim was making unwanted sexual advances and would not stop. To defend himself, Mr. Spencer pulled out a .22 caliber handgun that he had gotten from a friend the night before for protection. He pulled out the gun because he was afraid. He testified that the victim told him the handgun was unloaded, and she tried to take the gun from him when it accidentally discharged. He then fired another warning shot in the air. He fled without taking any property from the victim.

The victim's testimony was more consistent with the physical evidence and the text messages from both cellphones, which were obtained from the wireless providers and introduced into evidence. The jury apparently accepted the victim's

version and found Mr. Spencer guilty. Due to the handgun, Mr. Spencer was sentenced to four concurrent twenty-five-year terms of imprisonment.

## II. THE <u>MELBOURNE</u> CHALLENGES DURING VOIR DIRE

During voir dire, the State used peremptory challenges to strike at least two African-American members of the venire. When the State used a peremptory challenge on venireperson 16, the transcript reflects the following:

> [DEFENSE COUNSEL]: Judge, [venireperson 16], I believe was an African American female. This is the second African American stricken by the state for peremptory.[1] I would ask for a race-neutral reason.
>
> [THE COURT]: Is that as to number 16?
>
> [DEFENSE COUNSEL]: It is.
>
> THE COURT: There's an objection. The burden shifts to the state.
>
> [ASSISTANT STATE ATTORNEY]: During individual voir dire at the bench, [venireperson 16] indicated that she had been arrested for battery, battery, domestic violence, specifically.
>
> THE COURT: Just a moment. Let me look at my notes.
>
> [DEFENSE COUNSEL]: Judge, that is correct.
>
> THE COURT: You may respond.
>
> [DEFENSE COUNSEL]: I have no response.

---

[1]The record does not support defense counsel's claim that the State's requested peremptory strike was the second such request involving an African-American. Perhaps the race of an earlier challenged venireperson is not revealed by the record. We note that the State did challenge without opposition an earlier African-American venireperson for cause. Although it was not necessary, the State provided a neutral reason for that unopposed challenge for cause. Perhaps that is the challenge that defense counsel recalled.

THE COURT: The state has indicated a race-neutral reason. The court finds no pretext in the exercise of this peremptory challenge. The objection to the exercise of a peremptory as to [venireperson] 16 is overruled.

Shortly thereafter, the State used a peremptory challenge to strike venireperson 11, who was also African-American. As to this strike, the transcript reflects the following:

THE COURT: State exercises a peremptory as to [venireperson] 11.

[DEFENSE COUNSEL]: Judge, I'm sorry to interrupt, but I would ask for a race-neutral reason, him being an African American male.

THE COURT: Burden shifts. Go ahead.

[ASSISTANT STATE ATTORNEY]: During individual voir dire, [venireperson 11] did indicate that he had a friend who was arrested for breaking and entering, B and E.

[DEFENSE COUNSEL]: He also indicated that he had a friend that was killed, and I would also say he did say numerous times he could be fair and impartial.

THE COURT: Okay. I note that the standard here is whether or not the state has indicated a race-neutral reason, whether the court sees or finds or perceives a pretext in the exercise of that peremptory challenge. The court finds no such pretext, finds that you've stated a race-neutral reason. The objection is overruled as to the exercise [of] that peremptory challenge.

At the end of the selection process when accepting the jury, Mr. Spencer's attorney made a proper Joiner objection concerning these two peremptory challenges. See Joiner v. State, 618 So. 2d 174, 176 (Fla. 1993). Following entry of the judgments and sentences, Mr. Spencer appealed to this court.

### III.  A BRIEF OVERVIEW OF THE PROCEDURE FOR OBJECTIONS
### TO PEREMPTORY CHALLENGES

The legal literature addressing methods to avoid discrimination in peremptory challenges is extensive.  In this opinion, we will not address the developments before Melbourne v. State, 679 So. 2d 759 (Fla. 1996), but the earlier cases warrant study.  See, e.g., State v. Johans, 613 So. 2d 1319 (Fla. 1993); State v. Slappy, 522 So. 2d 18 (Fla. 1988), receded from by Melbourne, 679 So. 2d at 765; State v. Neil, 457 So. 2d 481 (Fla. 1984), receded from in part by Johans, 613 So. 2d at 1321.

After the U.S. Supreme Court adopted a three-step process in Purkett v. Elem, 514 U.S. 765 (1995), to clarify the procedures for handling a Batson[2] challenge in federal court, the Florida Supreme Court adopted a comparable three-step procedure for use in Florida.  See Melbourne, 679 So. 2d at 763-65.  In Hayes v. State, 94 So. 3d 452 (Fla. 2012), the supreme court extensively discussed and clarified the procedure articulated in Melbourne, but it did not actually change the procedure.

In both the trial courts and the appellate courts, two important rules set the backdrop for this process: (1) peremptory challenges are presumed to be exercised in a nondiscriminatory manner and (2) throughout the process, the burden of persuasion never leaves the opponent of the strike to prove purposeful discrimination.  See Hayes, 94 So. 3d at 461.

The supreme court articulated the three-step process in Melbourne as follows:

---

[2]Batson v. Kentucky, 476 U.S. 79 (1986).

A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.

At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.

Melbourne, 679 So. 2d at 764 (footnotes omitted).

The trial court's decision is reviewed on appeal with a rather deferential standard of review. As the supreme court recently summarized in Poole v. State, 151 So. 3d 402, 409 (Fla. 2014):

A trial court's decision to allow a peremptory strike of a juror is based primarily on an assessment of credibility. King v. State, 89 So. 3d 209, 229 (Fla. 2012) (citing Melbourne v. State, 679 So. 2d 759, 764 (Fla. 1996)), cert. denied, —— U.S. ——, 133 S. Ct. 478, 184 L. Ed. 2d 300 (2012). As a reviewing court, this Court must "acknowledge that peremptory challenges are presumed to be exercised in a nondiscriminatory manner." Nowell v. State, 998 So. 2d 597, 602 (Fla. 2008). On appeal, the appropriate standard to determine the likelihood that a peremptory challenge was used discriminatorily is abuse of discretion. Id. As the trial court is generally in the best position to assess the genuineness of the reason advanced, the decision will be affirmed unless clearly erroneous. Id. Although appellate courts need to defer to a trial court's credibility assessment, this Court has recognized that this deference does not require this Court to "rubber-stamp" a trial court's ruling, which is not supported by the record. See Hayes v. State, 94 So. 3d 452, 462 (Fla. 2012); Nowell, 998 So. 2d at 602.

Such a deferential standard of review can leave the judicial system open to abuse when the record from the trial court is inadequate. This problem was discussed at some length in Hayes, a case in which the trial court denied the defendant's request for a peremptory challenge while placing the burden of persuasion on the defendant. See Hayes, 94 So. 3d at 456-58, 462-64. The district court of appeal affirmed despite the State's concession of error on appeal. Id. at 458. In reversing the district court, the supreme court stated: "Compliance with each step is not discretionary, and the proper remedy when the trial court fails to abide by its duty under the Melbourne procedure is to reverse and remand for a new trial." Hayes, 94 So. 3d at 461 (citing Welch v. State, 992 So. 2d 206, 211-13 (Fla. 2008)). Mr. Spencer maintains that this statement entitles him to a reversal in this case. We do not agree.

## IV.  A CLARIFICATION OF THE THREE STEPS IN MELBOURNE

In reading both case law and transcripts, it seems to this court that some confusion exists about the three steps explained in Melbourne. We believe that the confusion arises from the combination of two of those steps in the following description in Melbourne:

> If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3).

Melbourne, 679 So. 2d at 764 (footnote omitted).

It is helpful to think of the three "steps" as three decisions made by the trial judge during the Melbourne hearing. Phrased as questions, those decisions are:

> 1.  Has the opponent properly invoked the Melbourne procedure by (a) objecting, (b) demonstrating the venireperson's protected classification, and (c) requesting

- 8 -

the court to have the proponent of the challenge state a
neutral reason for it?

2. Has the proponent of the peremptory challenge provided
a facially neutral explanation for the challenge?

3. Has the opponent of the challenge, following the facially
neutral explanation, met its burden of persuasion to establish
that the facially neutral reason is a prextext?

In a case where the State's peremptory challenge is ultimately granted
and the defendant's objection is overruled at the end of a full <u>Melbourne</u> hearing, the
actual decision-making process involves more than three components.  The three
decisions seem to involve the following components:

**In step 1:**

(a)  The State moves to exercise a peremptory challenge for
venireperson X.

(b)  The defendant objects, showing that venireperson X falls
within a protected class and requesting a neutral reason for
the peremptory challenge.

(c)  The court finds the defendant's objection to be sufficient.

**In step 2:**

(a)  The court asks the State for a neutral reason for the
peremptory challenge.

(b)  The State provides the reason or reasons that it claims
are neutral.

(c)  The defendant is given an opportunity to respond.

(d)  The court determines that the reason is facially neutral.

**In step 3:**

(a)  The court asks the defendant if he wishes to make a
genuineness objection.

(b)  If the defendant chooses to make that objection, the defendant is permitted to make an argument and explain the facts and circumstances that support the defendant's claim that the facially neutral reason is a pretext.

(c)  The State is given an opportunity to respond.

(d)  The court makes its ruling that the facially neutral reason for the peremptory strike is genuine, explaining as necessary the basis for that ruling.

(e)  Finally, if necessary, the defendant asks the court to provide any additional finding or clarity in the ruling to preserve the issue for appeal.

Courts have had a tendency to intermingle steps 2 and 3 of the Melbourne analysis.[3]  Indeed, the transcript in this case as to venireperson 11 demonstrates that the trial court announced the judicial decision for step 3 before it announced the decision for step 2.  In most cases, the attorneys and the trial court manage to complete the steps required for the first two judicial decisions without much difficulty.  The difficulty arises during the five components of the step 3 decision under the Melbourne analysis.

---

[3]See, e.g., Daniel v. State, 697 So. 2d 959, 960 (Fla. 2d DCA 1997) (when the defense objected to the State's reasons for its peremptory challenges as racially motivated, the trial court concluded that the State's reasons were "race neutral"); Landis v. State, 143 So. 3d 974, 976-77 (Fla. 4th DCA 2014) (the trial court made a finding that the State's reason for its peremptory was "genuine," which actually appears to have been a finding that the reason was facially race neutral); Cook v. State, 104 So. 3d 1187 (Fla. 4th DCA 2012) (the trial court and the parties all appear to have intermingled steps 2 and 3); Sharp v. State, 789 So. 2d 1211, 1212 (Fla. 5th DCA 2001) (the trial court appears to have skipped to a determination of pretext before deciding whether the reason proffered by the defense as the proponent was facially race neutral).

**V. THE OPPONENT'S BURDEN OF PERSUASION INCLUDES AN OBLIGATION TO OBJECT TO DEFICIENCIES IN <u>MELBOURNE'S</u> STEP 3 PROCESS**

There is little question that the five components of the step 3 decision described in the preceding section are sometimes not fully performed in the trial court. Trial courts sometimes rule on the issue of "genuineness" even when the opponent has not suggested that the neutral reason was a pretext. Judges sometimes reject a claim of pretext without giving the opponent a full opportunity to argue the issue. The trial court ruling is often more of a legal conclusion than a series of findings about the circumstances surrounding the challenge. But many times these deficiencies in step 3 are not the subject of any specific objection by the party opposing the peremptory challenge. This case involves such deficiencies at least as to venireperson 11, and the outcome of this case depends on whether the defendant, as the opponent of the challenge, had a burden to object to the step 3 deficiencies and to call upon the trial court to correct them before the conclusion of jury selection. For the reasons explained below, we conclude that the opponent of a peremptory challenge has such a burden.

**A.** *The Essence of Pretext Is Deception*

There is no question that the process of performing the step 3 analysis in the trial court and reviewing that step in an appellate court is the most difficult part of the <u>Melbourne</u> process. Courts have tended to be indirect in explaining why this part of the process is so difficult. In addressing the question of "pretext," we explain that the issue is not "reasonableness" but "genuineness." <u>Murray v. State</u>, 3 So. 3d 1108, 1120 (Fla. 2009).

But a common definition of "pretext" near the time <u>Purkett</u> and <u>Melbourne</u> were written was "a false reason or motive put forth to hide the real one; excuse."

Webster's New World Dictionary, Third College Edition 1067 (1988).  Another was "a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs."  Webster's Third New Int'l Dictionary 1797 (1986).

Thus, the decision the trial court is called upon to make in step 3 has little to do with the substance of the reason given by the lawyer that requests to strike the venireperson; it has to do with the lawyer's intent.  The trial court is called upon to determine whether the lawyer presenting the explanation for the peremptory challenge, as an officer of the court, is concealing an improper motive.  Ultimately, the question the trial court must answer is whether the lawyer has truthfully provided a neutral reason or whether the lawyer is either deceiving himself as a matter of subconscious prejudice or, even worse, simply lying to the court.  "Genuineness," thus, is really a question of whether a lawyer is being disingenuous.

It is not a pleasant task for one attorney to insist that the trial court determine whether another officer of the court is relying on a pretext.  It is an even less pleasant task for the trial court to make an affirmative finding of pretext.  One of the reasons the case law has not required trial courts to "recite a perfect script or incant 'magic' words," see Hayes, 94 So. 3d at 464, is that appellate courts understand the reluctance of trial courts to make this finding.  "Nevertheless, 'Melbourne does not relieve a trial court from weighing the genuineness of a reason just as it would any other disputed fact.' "  Hayes, 94 So. 3d at 463 (quoting Dorsey v. State, 868 So. 2d 1192, 1202 (Fla. 2003)).

A lawyer should not lightly claim that another lawyer's explanation for his peremptory challenge is pretextual.  But when the circumstances and the interest of the

client require this claim, the lawyer objecting to the peremptory challenge should be prepared to make this claim and should expect to make a complete argument demonstrating both to the trial court and, if need be, to the appellate court that the proponent of the peremptory challenge is engaging in impermissible discrimination.

If it is truly presumed that lawyers exercise peremptory challenges in a nondiscriminatory manner, then the trial court should not be expected to initiate on its own a genuineness challenge of every facially neutral reason. This is particularly true when no party has responded to the neutral reason with a claim that it is a pretext. Given the seriousness of a charge that a lawyer is providing a pretextual reason for a challenge, the opponent should be expected to object to the facially neutral reason as a pretext. It is unquestionably the better practice for a trial court, having made a determination of neutrality under step 2 of the Melbourne analysis, to ask the opponent whether he or she wishes to challenge the genuineness of the proponent's reason, but we see no reason to reverse a judgment and sentence following an entire trial when the trial court omits this step without objection from anyone.

**B. *The Circumstances Supporting a Claim of Pretext Are Often Factually Complex***

As Justice Pariente explained for the court in Hayes:

> It has been observed that "[t]he genuineness of the explanation is the yardstick with which the trial court will determine whether or not the proffered reason is pretextual." Davis v. State, 691 So. 2d 1180, 1183 (Fla. 3d DCA 1997). Melbourne teaches that to assess genuineness, the trial court must consider all relevant circumstances surrounding the strike in determining whether the proffered reason for the strike is genuine. Melbourne, 679 So. 2d at 764 n.8. This Court explained in Murray v. State, 3 So. 3d 1108 (Fla. 2009), that

> [i]n determining whether or not a proffered race-neutral reason for a peremptory strike is a pretext, the court should focus on the genuineness of the race-neutral explanation as opposed to its reasonableness.
>
> In making a genuineness determination, the court may consider all relevant circumstances surrounding the strike. "Relevant circumstances may include—but are not limited to—the following: the racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment." [Melbourne, 679 So. 2d at 764 n.8] (citing State v. Slappy, 522 So. 2d 18 (Fla. 1988)); see also Booker v. State, 773 So. 2d 1079, 1088 (Fla. 2000) ("[W]e provided a nonexclusive list of factors a trial court may consider in determining whether the reason given for exercising a peremptory challenge is genuine. . . ." (citing Melbourne, 679 So. 2d at 764 n.8)).

Murray, 3 So. 3d at 1120 (citations omitted).

Hayes, 94 So. 3d at 461-62 (alterations in original).

The circumstances described in Hayes and Murray are not an independent basis to establish pretext. Rather, they are circumstances used to determine the intent of the lawyer presenting the peremptory challenge. Intent is always a difficult factual issue; it is usually established with circumstantial evidence. It is no different in this context.

Again, it is the better practice for a trial court to affirmatively ask an opponent to state all of the circumstances the opponent believes support a claim of pretext, but if the trial court omits this step, it should be incumbent upon the opponent to object and ask to place into the record the circumstances that it wishes the trial court to

- 14 -

consider and the appellate court to review. Often it may seem apparent to the trial court that the neutral reason is not a pretext. If the court jumps ahead because of the judge's own thought process, it should be the opponent who has an obligation to slow the decision-making process and to make certain the record is adequate.

Under Melbourne, it is the opponent of the challenge that has the burden of persuasion from the beginning to the end. We recognize that in step 3 it might be feasible to place a burden on the proponent of the peremptory challenge to demonstrate "genuineness," but we are not authorized to make that change in the law.

**C.** ***The Remedy Required for Any Error in a*** <u>***Melbourne***</u> ***Hearing Is Drastic***

An error in this process generally requires a new trial even if the rest of the trial is flawless. See Hayes, 94 So. 3d at 461 ("[W]e hold that the proper remedy in all cases where the trial court errs in failing to hold a [peremptory challenge] inquiry [on the basis of alleged discrimination] is to reverse and remand for a new trial." (alterations in original) (quoting Johans, 613 So. 2d at 1322)). When an error results in this type of drastic relief, it is important that litigants not be allowed to trap or trick the trial judge into reversible error by failing to make objections or by making inadequate objections. Such an error should not be a matter of inadvertence. The trial court needs a full and fair opportunity to correct or avoid an error in the procedure before the jury is sworn. Cf. Trotter v. State, 576 So. 2d 691, 693 (Fla. 1990) (describing the complex steps required to preserve as reversible error the denial of a challenge for cause).

Thus, as we stated at the beginning of this opinion, we see no basis to believe that the supreme court was abandoning requirements for full preservation in Hayes when it stated that "[c]ompliance with each step is not discretionary, and the

proper remedy when the trial court fails to abide by its duty under the <u>Melbourne</u> procedure is to reverse and remand for a new trial." <u>See</u> <u>Hayes</u>, 94 So. 3d at 461. Compliance with the steps in <u>Melbourne</u> may not be discretionary with the trial court, but that does not relieve the opponent of the peremptory challenge of the obligation to object when steps are omitted or of the need to present the information necessary to carry the opponent's burden of persuasion.

**D.  *The Process Should Not Require the Trial Judge to Become an Advocate for a Venireperson or to Step Outside His or Her Neutral Role***

In <u>Powers v. Ohio</u>, 499 U.S. 400, 409 (1991), the U.S. Supreme Court held that a venireperson has an equal protection right "not to be excluded from [a petit jury] on account of race."  The court was quite aware that a venireperson would have limited ability to enforce this right.  <u>Id.</u> at 413-14.  It held that a criminal defendant has standing to raise this third-party equal protection claim for a venireperson.  <u>Id.</u> at 415.

The U.S. Supreme Court does not seem to have expected the trial judge to play the role of a venireperson's attorney.  Since the Florida Supreme Court decided <u>Hayes</u>, parties now argue on appeal that <u>Melbourne</u> requires the trial court to demonstrate the circumstances of "genuineness" when the parties have not made arguments on the record as to those circumstances.  <u>See, e.g.</u>, <u>Cook v. State</u>, 104 So. 3d 1187, 1189-90 (Fla. 4th DCA 2012) (concluding that the defendant, as the opponent of the strike, met his burden of persuasion in step 3 "by asking 'the state [to] explain why being a nurse . . . would make her unfit to be a juror on this case or have any bearing at all on whether she could be a juror' " (first alteration in original)).  They rely on both the above-quoted language from <u>Hayes</u> as well as on the following language from that opinion:

> Therefore, where the record is completely devoid of any indication that the trial court considered circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court.

Hayes, 94 So. 3d at 463.

We believe that this language is being taken out of context. It is true that the trial courts must make the three decisions required by Melbourne if requested, but the parties are not entitled to sit back and have the court go through this process for them. It simply is not the job of the trial court to develop the circumstances that may weigh against the genuineness of a proposed peremptory challenge. The trial court has an obligation to maintain its neutrality. See, e.g., Livingston v. State, 441 So. 2d 1083, 1086 (Fla. 1983) ("Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge," and a court has the duty "to scrupulously guard this right." (quoting State ex rel. Mickle v. Rowe, 100 Fla. 1382, 1385 (1930))); J.L.D. v. State, 4 So. 3d 24, 26 (Fla. 2d DCA 2009) ("The requirement of judicial impartiality is at the core of our system of justice." (quoting McFadden v. State, 732 So. 2d 1180, 1184 (Fla. 4th DCA 1999))). If the trial court is to maintain its position of neutrality, its job is merely to rule on this delicate and fact-intensive issue when the opponent has presented the issue for ruling under its burden of persuasion.

## VI. APPLICATION OF THE LAW TO THE FACTS IN THIS CASE

Reviewing the transcript concerning the challenge to venireperson 16, the trial court properly commenced the Melbourne hearing. Defense counsel had "no response" when the State provided venireperson 16's prior arrest for domestic violence

as its neutral reason for the challenge. The trial court then expressly found that there was "no pretext" in the State's exercise of this peremptory challenge. It is frankly unclear whether the trial court thought it was ruling that the reason was facially race neutral and merely used the wrong language, or whether it simply jumped to step 3 without making an express ruling on step 2. Defense counsel never claimed that the State's reason was a pretext. Defense counsel never even attempted to offer any circumstance that might indicate that the State's reason for its peremptory challenge was pretextual. Even on appeal, the defendant has not argued that anything in the record suggests that the State's reason for this peremptory challenge supports a theory that it was a pretext. The record simply does not support any preserved error as to the decision to allow a peremptory challenge of venireperson 16.

The record as to venireperson 11 presents a somewhat closer question. The trial court again properly commenced the hearing. Both the lawyers and the trial court seemed to intermingle the Melbourne step 2 and step 3 determinations into a combined ruling. For example, defense counsel's response to the State's description of its neutral reason was to state that venireperson 11 had a friend who was killed and that venireperson 11 had claimed that he could still be fair and impartial. The response does not seem to have anything to do with whether the fact that venireperson 11 had a friend who was arrested for a breaking and entering was a facially neutral reason for the State to exercise a peremptory challenge. It seems instead to raise a circumstance that defense counsel believed may have affected whether the State's explanation was pretextual. It frankly is not clear to this court why the circumstance of the killed friend would support a theory of pretext. In its ruling, the trial court provided a reasonable

summary of steps 2 and 3 from <u>Melbourne</u> and then made its findings related to those steps in reverse: It found that the State's explanation was not a pretext before it concluded that it was facially race neutral.  Defense counsel did not object to this process, did not ask to state the defendant's position with greater specificity, and did not ask either the court or the State to provide further information.  If defense counsel had pointed out, for example, that other remaining members of the venire were white and had friends who had committed felonies, then that would have been important information.

Although the State's explanation for its peremptory challenge would seem to apply to many people who are subpoenaed for jury duty, from the content of this record we cannot hold that the trial court abused its discretion or that its finding was clearly erroneous when it determined that the neutral reason was not pretextual.  The record demonstrates that the trial court was aware that it needed to consider the issue of genuineness and that the parties had an opportunity to present information on that issue.  Even if defense counsel had properly objected to genuineness and presented the issue for ruling, this is not a situation where the record is "completely devoid" of any indication that the trial court considered this issue.  See <u>Hayes</u>, 94 So. 3d at 463, 465.  Accordingly, we find no reversible error in the trial court's decision to permit the State to exercise a peremptory strike of venireperson 11.

## VII.  A CERTIFIED QUESTION

Many of the decisions discussing <u>Melbourne</u> do not expressly consider the burden on the opponent of a peremptory challenge to create a record establishing the basis for a claim of pretext.  Nevertheless, we are inclined to believe that the analysis in

this decision and in the decision in <u>Ivy v. State</u>, case No. 2D14-289 (Fla. 2d DCA Mar. 18, 2016), which we release on this same day, conflict with the First District's decision in <u>Simmons v. State</u>, 940 So. 2d 580 (Fla. 1st DCA 2006). There is at least tension between our analysis and that in other cases, including <u>Smith v. State</u>, 143 So. 3d 1194, 1196-97 (Fla. 1st DCA 2014), <u>Collier v. State</u>, 134 So. 3d 1042, 1043-44 (Fla. 1st DCA 2013), and <u>Cook</u>, 104 So. 3d at 1189-90.

The process of jury selection occurs daily in our courts, and there should be no confusion about the relative burdens of the parties and of the court during a <u>Melbourne</u> hearing when the hearing reaches step 3. Accordingly, we certify the following dispositive question as one of great public importance:

> DURING A <u>MELBOURNE</u> HEARING, WHEN A TRIAL COURT FINDS THAT THE PROPONENT'S REASON FOR A PEREMPTORY CHALLENGE IS FACIALLY NEUTRAL, IS IT THE BURDEN OF THE OPPONENT (1) TO CLAIM THE REASON IS A PRETEXT, (2) TO PLACE INTO THE RECORD THE CIRCUMSTANCES SUPPORTING ITS POSITION, AND (3) TO OBJECT IF THE TRIAL COURT'S RULING DOES NOT CONTAIN ADEQUATE FINDINGS ON THE ISSUE OF GENUINENESS?

> Affirmed.

NORTHCUTT and CRENSHAW, JJ., Concur.