NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

AARON RHASHAUD IVY,                    )
DOC# W01913,                           )
                                       )
          Appellant,                   )
                                       )
v.                                     )          Case No. 2D14-289
                                       )
STATE OF FLORIDA,                      )
                                       )
          Appellee.                    )
_____ )

Opinion filed March 18, 2016.

Appeal from the Circuit Court for Hendry
County; James D. Sloan, Judge.

Howard L. Dimmig, II, Public Defender,
and Deana K. Marshall, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Bilal A. Faruqui, Assistant
Attorney General, Tampa, for Appellee.


ALTENBERND, Judge.

          Aaron Rhashaud Ivy appeals his judgments and sentences for robbery

with a firearm, two counts of false imprisonment with a firearm, grand theft, and felon in

possession of a firearm.  We affirm, writing only to discuss his claim that the trial court

did not conduct an adequate step 3 genuineness inquiry under Melbourne v. State, 679

So. 2d 759 (Fla. 1996), when he opposed the State's peremptory challenge of an

African-American venireperson. Relying on our decision in <u>Spencer v. State</u>, No. 2D14-316 (Fla. 2d DCA Mar. 18, 2016), we conclude that Mr. Ivy did not create a record preserving and establishing that he is entitled to a new trial due to the trial court's grant of the State's peremptory challenge. Accordingly, we affirm.

## I. THE FACTS

Mr. Ivy, along with two codefendants, robbed a jewelry store during business hours on August 6, 2010. The robbery was recorded on surveillance cameras. Mr. Ivy sustained a significant cut on his leg when he jumped over a glass counter to assault one of two store employees who were present, causing the glass to break. He cleaned his wound in the store's bathroom. He and his codefendant restrained the two employees in the bathroom by taping their hands together. The police arrived while the robbery was in progress because the police station was just around the corner from the store. The police arrested the three perpetrators as they fled the scene. Both employees identified Mr. Ivy as the robber who had carried the handgun. Thus, the evidence against Mr. Ivy in this case was very strong.

The State charged all three defendants in a single information, charging Mr. Ivy with two counts of kidnapping with a firearm, possession of a firearm by a convicted felon, first-degree grand theft, and armed robbery. The three defendants were tried together. Mr. Ivy was convicted on all five counts, but the jury returned lesser convictions of false imprisonment instead of kidnapping, with special findings that Mr. Ivy possessed a firearm. He was sentenced as a habitual felony offender to concurrent sentences, the longest of which is forty-five years in prison for the armed robbery.

## II. JURY SELECTION

The transcript of jury selection in this case reflects a process different from that in Spencer. The trial occurred in a rural county where many people know one another. Several members of the venire were friends or relatives. The judge recognized at the inception of the process that some members of the venire had pending criminal cases. Some disclosed that they had relatives represented by the public defender or that they knew the victim or witnesses in this case. The court reporter identified each member of the venire by name in the transcript. In an era when neighbors in large metropolitan cities do not even know one another's names, the transcript is a refreshing reminder of the value of community. But it is also an environment in which jury selection is perhaps more casual.

During jury selection, one of the venirepersons revealed that she had a son-in-law who had once been a law enforcement officer but was no longer. Neither the State nor the defense inquired further on this subject. After a large number of venirepersons were stricken for cause, the State and the defense attorneys exercised peremptory challenges and initially reached an agreement on the first six jurors. As they were about to select the alternates, the State decided to exercise a back strike. The record reflects the following:

> THE COURT: I thought you accepted the panel?
>
> [ASSISTANT STATE ATTORNEY]: State of Florida, any party can use back strikes or peremptories until such time as a jury panel is sworn. That's Florida rules of criminal procedure[].
>
> THE COURT: What do you want?
>
> [ASSISTANT STATE ATTORNEY]: State of Florida would strike [venireperson] 126 . . . .

[COUNSEL FOR MR. IVY]: We would like a race-neutral[1] reason for the peremptory. [Venireperson 126] is an African American juror.

[ASSISTANT STATE ATTORNEY]: Her son was previously a member of law enforcement. For that reason the State would move to strike her for peremptory.

[COUNSEL FOR CODEFENDANT ONE]: There's no indication that she said she would be less likely to believe the testimony of a law enforcement officer.

[ASSISTANT STATE ATTORNEY]: That's not one of the requirements of the race-neutral reason.

THE COURT: It's just that, to be race neutral.

[COUNSEL FOR MR. IVY]: It has to be genuinely race neutral. And the fact that a juror has a relative who was a police officer seems to be good reason for the defense to get rid of her, but not the State.

THE COURT: Any other reason you know of you can provide?

[ASSISTANT STATE ATTORNEY]: If it's good for defense counsel to use as a race-neutral reason, as [counsel for Mr. Ivy] just argued, it would be a reason that would be valid for the State of Florida as well.

[COUNSEL FOR CODEFENDANT ONE]: Just for the record, on behalf of [codefendant 1] we object and ask for a race-neutral reason for the record.

[COUNSEL FOR CODEFENDANT TWO]: We join in.

THE COURT: Understood. However, I think the State has argued adequate[ly] its race-neutral reason. If it's good for one side then it's good—

[COUNSEL FOR MR. IVY]: It would make sense I use it obviously.

---

[1]The court reporter used the word "res" rather than "race" in this portion of the transcript. We have substituted the correct word throughout.

THE COURT: Who said it has to make sense?

[COUNSEL FOR MR. IVY]: Genuineness.

THE COURT: It means if we look at it on its face, if that would be a race-neutral reason for exercising, just because it might make more sense for one side than the other does not remove it from being race neutral. I note your objection for the record, I'm going to allow it—

[COUNSEL FOR MR. IVY]: Thank you, judge.

THE COURT: (Continuing) —as race neutral. . . .

Prior to this exercise of a peremptory challenge, three other potential jurors who had connections to law enforcement had been dismissed. One had been dismissed for cause and the other two were peremptorily stricken by a defendant. At the end of the selection process when accepting the jury, Mr. Ivy's attorney made a proper Joiner objection concerning these two peremptory challenges. See Joiner v. State, 618 So. 2d 174 (Fla. 1993).

### III. APPLYING THE SPENCER ANALYSIS IN THIS CASE

We will not repeat the legal discussion contained in sections III through V of Spencer. In section IV of that opinion, we described each step of the three-step procedure established in Melbourne[2] and suggested the components necessary to accomplish those steps. See Spencer, slip. op. at 8-10. Applying that analysis to the State's peremptory challenge of venireperson 126 in this case, the trial court adequately resolved the questions required for step 1 and properly began step 2.

When Mr. Ivy's counsel asked the State for a race-neutral reason, the State explained that venireperson 126 had a son-in-law who had previously been a law

---

[2]Melbourne v. State, 679 So. 2d 759, 763-65 (Fla. 1996).

enforcement officer. Counsel for one of Mr. Ivy's codefendants responded, but only to suggest that venireperson 126 did not indicate that she was less likely to believe a law enforcement officer. That response seems directed at the issue of genuineness and not facial race neutrality. The State immediately pointed this out, responding "[t]hat's not one of the requirements of the race-neutral reason." The court echoed this by stating that "[i]t's just that, to be race neutral."

Mr. Ivy's attorney then argued that the reason must be "genuinely race neutral," and suggested that the circumstance of a venireperson having a family member that had been a law enforcement officer seemed to be a valid reason for a peremptory challenge by a defendant but not by the State. Mr. Ivy's counsel thus appears to have been moving on to step 3 by suggesting that even if a proffered reason is facially race neutral, it must be "genuinely" race neutral. But he did not make this explicit, and the trial court does not appear to have understood that Mr. Ivy's counsel had moved on to step 3. Instead, the trial court remained at step 2 and asked why a race-neutral reason had "to make sense." Instead of clarifying the confusion, explaining to the trial court that there is a third step in Melbourne, or objecting to the State's facially race-neutral reason as a pretext, Mr. Ivy's counsel simply responded: "Genuineness." Apparently the trial court still did not understand that it needed to make a separate determination on the issue of pretext, and it allowed the peremptory challenge "as race neutral." Thus, the trial court never made a finding on whether the facially race-neutral reason was pretextual.

We conclude that the word "genuineness" with nothing more is not an adequate objection informing the trial court that it must make two separate

- 6 -

determinations, facial neutrality and genuineness, and not merely one. Perhaps more critically, no defense attorney explained or even asked to explain the "circumstances" discussed in Hayes v. State, 94 So. 3d 452, 461-62 (Fla. 2012), and Murray v. State, 3 So. 3d 1108, 1120 (Fla. 2009), that might support a determination that the assistant state attorney was using the stated neutral reason when her true reason involved impermissible discrimination. Most of the components required for a proper step 2 and step 3 Melbourne hearing as described in Spencer simply did not take place in this case, but the trial court did not prevent those steps from occurring. After the trial court responded to defense counsel's word "genuineness" with a ruling that was clearly on race neutrality, defense counsel merely responded, "Thank you, judge."

Because the trial court never actually reached the issue of genuineness, the assistant state attorney was never asked to respond to the defense attorneys' argument that only defendants can use peremptory challenges on venirepersons whose relatives are former law enforcement officers or to any claim that she was being disingenuous in asking for this challenge. We do not think that Mr. Ivy, as the opponent of the peremptory challenge, met his burden of persuasion to overcome the presumption that the State's proffered reason was genuine or that its challenge was proper. See Hayes, 94 So. 3d at 461 (citing Melbourne, 679 So. 2d at 764). This is not a case in which it is difficult to understand what the response would have been. The circumstances surrounding the son-in-law's exit from a law enforcement career were unknown. Those circumstances could possibly have caused venireperson 126 to feel strongly against law enforcement. Any experienced trial attorney would understand that asking about those circumstances in open court in front of the entire venire involved

risks and could be embarrassing to the challenged venireperson. A decision to forego the questions and simply use a peremptory challenge on this venireperson for this reason is both race neutral and arguably a sensible trial strategy.

We are less certain whether the holding in Hayes may require a reversal under the facts in this case as compared to the facts in Spencer. But the three defense attorneys did not provide the trial court with adequate notice that it was not following the decision-making process necessary for a Melbourne hearing. For the reasons explained in Spencer, we conclude that Mr. Ivy did not adequately preserve a Melbourne issue in this case and cannot demonstrate on this record that the trial court abused its discretion or clearly erred in allowing the strike. We find no reversible error in the trial court's decision to permit the State to exercise a peremptory challenge of venireperson 126.

In Spencer, we expressed concern that our analysis may conflict with the First District's decision in Simmons v. State, 940 So. 2d 580 (Fla. 1st DCA 2006). In Simmons, the State exercised peremptory challenges on several African-American members of the venire. Id. at 581. When defense counsel asked for a race-neutral reason for one of them, the State responded that the venireperson's husband was currently a law enforcement officer. Id. The subsequent objection made by defense counsel and the ruling by the trial court in that case were almost identical to what occurred in this case. Defense counsel in Simmons argued that the State's reason might be good for defense counsel but not for the State, and the court ruled: "I will allow the challenge. That is a race-neutral reason. Whether or not we view it favorable for the State or favorable for the Defense, it is a race-neutral reason." Id. The district court

reversed for a new trial because based on the court's explanation in its ruling, "it appear[ed] that the trial court bypassed the genuineness inquiry required in the Melbourne analysis." Id. 582-83.

As we read the facts in Simmons, we are unconvinced that defense counsel in that case adequately objected to the trial court's failure to make the step 3 genuineness determination from Melbourne. However, it appears that the First District treated the circumstance of a venireperson with a relative who was an active law enforcement officer differently from how this court is treating a venireperson related to a former law enforcement officer. Whether this factual difference is sufficient to prevent this case from conflicting with Simmons is debatable. To avoid the necessity of resolving that debate, we certify the same dispositive question of great public importance in this case that we certified in Spencer:

> DURING A MELBOURNE HEARING, WHEN A TRIAL COURT FINDS THAT THE PROPONENT'S REASON FOR A PEREMPTORY CHALLENGE IS FACIALLY NEUTRAL, IS IT THE BURDEN OF THE OPPONENT (1) TO CLAIM THE REASON IS A PRETEXT, (2) TO PLACE INTO THE RECORD THE CIRCUMSTANCES SUPPORTING ITS POSITION, AND (3) TO OBJECT IF THE TRIAL COURT'S RULING DOES NOT CONTAIN ADEQUATE FINDINGS ON THE ISSUE OF GENUINENESS?

> Affirmed.

VILLANTI, C.J., and KELLY, J., Concur.